## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

SHARON ROSE ZLATKIN, and
PEGGY ZLATKIN,

        *Plaintiffs,*

*v.*

TOWNSHIP OF BUTMAN,
COUNTY OF GLADWIN, JOSHUA
M. FARRELL, ELIZABETH M.
POST, STEVEN WORPEL, ROBERT
LEE, JUSTIN RONALD
HENDERSON, JAMES MAVEAL,
JR., AARON MILLER, NORMAN E.
GAGE, VICKI SUE CHICKERING,
GINA COON, REBECCA
KREISHER, and
KAREN MOORE,

        *Defendants.*

_____/

Case No. 1:23-cv-12693

Thomas L. Ludington
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT VICKI SUE CHICKERING'S MOTION TO DISMISS (ECF No. 22) AND DEFENDANT JUSTIN R. HENDERSON'S MOTION TO DISMISS (ECF No. 34)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant

Chickering's Motion to Dismiss (ECF No. 22) be **GRANTED IN PART** and

Defendant Henderson's Motion to Dismiss (ECF No. 34) be **GRANTED IN PART**.

## II.  REPORT

### A. Introduction

Plaintiff Sharon Zlatkin and her mother, Plaintiff Peggy Zlatkin, former Butman Township residents, initiated this 42 U.S.C. § 1983 action pro se.  (ECF No. 1, PageID.5, 10 ¶¶ 1, 5).  This case involves a 78-page complaint alleging a conspiracy involving numerous defendants, allegations of animal abuse and neglect, the issuance of an unsupported warrant, an illegal search and seizure, vindictive prosecution, and violations of Plaintiffs' constitutional rights.   (ECF No. 1).  Plaintiffs filed this case seeking monetary, injunctive, and declaratory relief.  (*Id.* at PageID.75–78).  Defendants Vicki Sue Chickering and Justin Henderson both filed motions to dismiss in lieu of answers.  (ECF Nos. 22 and 34).

### B. Factual Background

Plaintiffs purchased a 187-acre farm located at 2699 Dutcher Road, Butman Township, Gladwin County, Michigan in August 2015 which they used as their residence.  (ECF No. 1, PageID.10, ¶ 2).  The farm comprises of a "red brick house, white garage, chicken coop, hip roof red barn, run-in shed, workshop and other outbuildings," and is located on the southside of Dutcher Road.  (*Id.* at PageID.10–11, ¶ 3).  Plaintiffs had both livestock and dogs living on the farm.  (*Id.* at PageID.10,

¶ 2).  Plaintiffs were in the business of training dogs and providing them to veterans who struggled with Post-Traumatic Stress Disorder ("PTSD").  (*Id.*).

Shortly after taking possession of the property, Plaintiffs became the targets of animosity and discrimination from their neighbors, William Roggow and James Augstine.  (*Id.* at PageID.11, ¶ 6).  Plaintiffs allege Augstine would surveil their farm by sitting in front of their home for hours at a time, make puerile gestures towards Plaintiff Sharon[1], trespass onto the property, and remove fencing.  (*Id.* at PageID.11, ¶¶ 7–8).  Further, Roggow and Augustine followed, stalked, and watched Plaintiffs' family members who live within a one mile radius of the property, as well as spread rumors about and defamed Plaintiffs.  (*Id.* at PageID.11, ¶ 9).  Despite reporting these transgressions to the Sheriff Department, Plaintiffs allege that Defendant Prosecutor Aaron Miller and Defendant Assistant Prosecutor Norman E. Gage "did nothing."  (*Id.* at PageID.11, ¶¶ 8, 10).  Plaintiffs allege that their horses and dogs have been poisoned, and they themselves have been the subjects of organized stalking and threats among other actions.  (*Id.* at PageID.12, ¶ 12).

In June 2016, Defendant James Maveal, Gladwin County Animal Control Officer, came onto their property and demanded that Sharon give him one of the German Shepards at the farm, and if she refused, he threatened to "seize the entire

---

[1] The majority of the allegations contained in the Complaint only involve Plaintiff Sharon.  For ease of reference, the Undersigned will refer to Plaintiff Sharon as either "Plaintiff" or "Sharon."

litter and the mother of the pups . . . ." (*Id.*).  Again, despite their complaints, neither the Sheriff Department nor Defendants Miller and Gage provided aid.  (*Id.*).

In 2017, Sharon began receiving citations from Defendant Maveal based on complaints made by Roggow.[2]  (*Id.* at PageID.13,14 ¶¶ 13, 18).  Plaintiff alleges that the ordinance upon which Defendant Maveal based the violations did not exist.  (*Id.* at PageID.14, ¶ 15).  Despite the nonexistence of this ordinance, Defendants Miller and Gage prosecuted Plaintiff, and upon disclosure of the invalidity of the ordinance promised to "find another avenue to charge" her.  (*Id.*).  The charges were dismissed after it became "apparent that [they] were manufactured by" Roggow.  (*Id.* at PageID.15, ¶ 19).

After a court hearing in May 2017, Defendant Maveal advised Plaintiff that "she should stop farming," return the property to its previous owner, and "go back down state."  (*Id.* at PageID.13, 14 ¶¶ 13, 16).  Defendant Maveal went on to warn Plaintiff that is she did not follow his advice he would ensure that she would not own an animal again and that she ultimately wound up with nothing.  (*Id.*).  In November 2017, an action for malicious prosecution was filed against Defendant Maveal.  (*Id.* at PageID.16, ¶ 26).  Later that year, in December 2017, Defendant Maveal "changed court documents without having a trial and made Plaintiff Sharon [ . . . ] 'responsible'

---

[2] Defendant Maveal issued Plaintiff five violations.  (ECF No. 1, PageID.14, ¶ 14).

for citations that he wrote against her, [ . . . ] under the purported Ordinance 2013-001." (*Id.* at PageID.18, ¶¶ 39, 41).

In August 2018, Roggow and Defendant Maveal filed complaints about Plaintiff and her animals which resulted in "five manufactured misdemeanor animal-at-large tickets." (*Id.* at PageID.22, ¶ 82). A few months later, Defendant Miller issued a warrant for Plaintiff's arrest. (*Id.* at PageID.23, ¶ 86).

In June 2019, Roggow began requesting citations be issued against Plaintiff. (*Id.* at PageID.23, ¶ 88). A month later, Plaintiff appeared in court, where she was accompanied by her attorney, and arraigned on the citations.[3] (*Id.* at PageID.23, ¶ 89).

On October 25, 2020, Defendant Maveal received a complaint of animal abuse but did not bring this information to Sheriff Shea's attention for investigation. (*Id.* at PageID.20, 32, ¶¶ 73, 123). Instead, on or about the next day, Defendant Maveal "instigated [a] call to the Michigan State Police." (*Id.* at PageID.20, ¶ 74). A few days later on November 4, 2020, around 9:15 am, a "mob of approximately 100 strong," with a Michigan State Police[4] ("MSP") vehicle in the lead, came onto her

---

[3] Plaintiff provides no further information on the outcome of the arraignment.

[4] During the raid, the MSP were under the direction and leadership of Defendant Trooper Robert E. Lee.[4] (ECF No. 1, PageID.33, ¶ 133).

property.  (*Id.* at PageID.20, ¶ 60[5]).[6]  At the driveway of the property, there were signs which stated, "Private Property No Trespassing."  (*Id.* at PageID.61, ¶ 234). Despite the signage, the group of individuals accompanied by Defendant Maveal proceeded onto the property.  The mob comprised of cars, vans, and animal haulers. (*Id.* at PageID.33, ¶ 133).  Plaintiff recognized Defendant Maveal, who was present during the raid, but did not recognize the other individuals.  (*Id.* at PageID.20, ¶ 72). The group of individuals then scattered on the property into Plaintiffs' "home, barns, stables, kennels, and chicken coop," seizing animals and loading them into vans, trucks, and trailers.  (*Id.* at PageID.20, ¶ 71).  During the seizure, Plaintiff heard the "animals screaming in pain" but was unable to see what was happening to them.  (*Id.* at PageID.21, ¶ 76).  She believes the animals were being "darted" as she saw a gun that is used for "shooting dart to immobilize animals," and later saw a photo of a "person with a hypodermic needle in her hand."  (*Id.* at PageID.21, 32 ¶¶ 76, 128).

At some point during the raid, Plaintiff demanded to see the warrant and requested that her court-appointed attorney, Defendant Rebecca Kreisher, be present.  (*Id.* at PageID.21, 33, ¶¶ 77, 134).  Defendant Trooper Robert Lee "flashed

---

[5] Plaintiff's complaint moves from Paragraph 50 to Paragraph 60, and there are no paragraphs labeled 51 to 59 included in the complaint.  It is not clear if the complaint is misnumbered or if there are paragraphs missing from the document.  The same issue is present in several other instances throughout the complaint.

[6] Plaintiff alleges that Defendant Maveal instigated raids on her on several occasions, and went to the MSP, West Branch Post in January and June 2018.  (ECF No. 1, PageID.33, ¶ 132).

a piece of paper," stated "you don't need to see it," and "put it back in his pocket." (*Id.*). Plaintiff then contacted Plaintiff Peggy to let her know about the raid. (*Id.* at PageID.21, ¶ 78). Following the call, an officer placed his hand on Plaintiff's shoulder and instructed her to "[c]ome out of the house with [them]." (*Id.* at PageID.34, ¶ 139). Around 10:25 am, Plaintiff Peggy arrived at the property and demanded to see the warrant but was rebuffed. (*Id.* at PageID.22, ¶ 81). She, and Plaintiff's sister, were then required to remain in the car and "were not free to go." (*Id.* at PageID.22, 35 ¶¶ 81, 141). They were forced to remain there for approximately seven hours. (*Id.* at PageID.35, ¶ 142). Defendants Lee and Henderson left the farm shortly after Plaintiff Peggy's arrival. (*Id.* at PageID.36, ¶ 145).

During the raid, Plaintiff was informed that MSP was only there to investigate a complaint, and no one was going to be arrested. (*Id.* at PageID.21, ¶ 79). Despite this representation, Plaintiff was instructed to remain in one spot while being guarded by two MSP officers and informed that "they would 'show her' what they meant if she moved" as they placed their hands on their guns. (*Id.* at PageID.22, ¶ 80). Her attorney was never called, and she was never read her rights. (*Id.* at PageID.34, ¶ 136). This ordeal took place over an 8-hour period, during which Plaintiff was not permitted to use the restroom and was not offered food or water. (*Id.*). At no point was Plaintiff shown a warrant despite her request because "the

officers hadn't sought a warrant" before entering her property.  (*Id.* at PageID.34, ¶ 137).

Defendant Lee returned to the farm around 4:30 pm with two warrants,[7] reviewed by Defendant Prosecutor Norman E. Gage, and signed by Defendant Magistrate Steven Worpell.  (*Id.* at PageID.37–38, ¶¶ 147–149, 156, 159).   One warrant was dated November 4, 2020 and time-stamped 11:51 am, but the other warrant not time-stamped.  (*Id.* at PageID.37, ¶ 150).   Neither warrant included "details of particularity," description of the livestock or dogs to be seized, the locations from which they were to be seized, or a description of the barns on the property.  (*Id.* at PageID.41, ¶¶ 170, 172).   The raid ended between approximately 4:30 and 5 pm.  (*Id.* at PageID.39, ¶ 160).   Defendant Lee then gave Plaintiff Peggy an indecipherable document outlining the items seized during the raid. (*Id.*).

Before leaving the farm, Defendant Lee announced that he would tell everyone who Plaintiff was and issue a press release to degrade and berate her as a hoarder and animal abuser.  (*Id.* at PageID.57, ¶ 221).   Defendant Lee apparently followed through with his threats by having messages about Plaintiff broadcasted on "the internet, local TV stations, and radio" and did so with the "intent to intimidate, harass, silence, and threaten" her.  (*Id.* at PageID.57, ¶ 222).   As a result of the press

---

[7] Plaintiff indicates pages were missing from the warrants.  (ECF No. 1, PageID.38, ¶ 158).

release, Plaintiff received hate mail by post, received hateful messages over the telephone, and was stalked on Facebook.  (*Id.* at PageID.58, ¶ 223).

Plaintiffs believe that the raid was "pay back for taking Roggow and Augstine to court" in September 2018.  (*Id.* at PageID.22, ¶ 84).  Further, Plaintiff purports Defendant Maveal

> "colluded with[,] willfully and wantonly[,] organize[d] all of the following who participated in the raid [on] November 4, 2020, Senior Field Staff Vicky Chickering, Michigan Department of Agriculture and Rule Development, RuAnn Hicks of Roscommon, Catherine Lemunyon of Standish, Michigan Arena Animal Control, Beth Wellman Midland Humane Society, Officers from Saginaw, Animal Control Officers from Bay City, and Missaukee County Human Society, Dr. Jan Pol, Veterinarian, Raymond Evans, Nicole Rayce, Aden Yoder, [ ] Lenon Wheeler, Jenny Lanvers, Lee Zielinski, [and] Nicole Rayce [all] acting willfully and wantonly in concert jointly with Defendant James Maveal."[8]

(*Id.* at PageID.20, 21, ¶ 75).

Defendant Rebecca Kreisher was appointed by Defendant Magistrate Elizabeth M. Post[9] to represent Plaintiff.  (*Id.* at PageID.43, ¶ 179).  She only spoke to Defendant Kreisher once during a brief telephone call and was never advised to

---

[8] Plaintiff also contends Defendant Maveal employed the Michigan State Troopers, Beth Wilman and others to commit acts against Plaintiffs.  (*Id.* at PageID.59–60, ¶¶ 229, 230).  Their actions resulted in running Plaintiffs from their home, caused them to fear for their safety, and caused Plaintiffs traumatic emotional distress.  (*Id.* at PageID.60, ¶ 232).

[9] Plaintiff contends that Defendant Post "knew or should have known that Defendant Rebecca Kreisher would not be effective as counsel for Plaintiff Sharon Zlatkin but intentionally appointed her to represent [Plaintiff] nonetheless."  (*Id.* at PageID.46, ¶ 182).

appear for a court appearance on November 24, 2020.[10]  (*Id.* at PageID.44, ¶ 181). During that appearance, Defendant Kreisher "could have made a motion to have all charges dismissed" but instead requested "to have a show cause against her own client Plaintiff Sharon Zlatkin."  (*Id.*).   Sharon alleges Defendant Kreisher's representation was inadequate.

Plaintiffs allege that Defendant Maveal had no authority to issue citations, issue violations, or seize animals as the Gladwin County Animal Control was not legally created by ordinance as required.  (*Id.* at PageID.17–19, ¶¶ 34–45).  Plaintiffs purport that the Gladwin County Commissioners, Sheriff Shea, and Defendants Aaron Miller, Norman Gage, Karen Moore[11], Judge Joshua [Farrell], Magistrate Elizabeth Post, and Butman Township "knew or should have known that [the] purported 'Ordinance 2013-001' never legally existed but still continued to prosecute Plaintiff Sharon Zlatkin."  (*Id.* at PageID.19, ¶ 47).

In December 2020, a complaint[12] was filed in the 80th District Court charging Plaintiffs with Abandoning/Cruelty to 25 or more animals in violation of MCL 750.50(4)(c), a felony, and four misdemeanor counts.  (*Id.* at PageID.26, 40, ¶¶ 98,

---

[10] Plaintiff was slated to appear on the following state court matters: 18-1971, 18-1972, 19-1511, 19-1575, and 19-1626.  (*Id.* at PageID.44,47–48, ¶¶ 181, 186).

[11] Plaintiffs allege Defendant Moore works at "the purported Gladwin County Animal Shelter as a[] purported Animal Control officer" and that she "took seven dogs from the Plaintiffs' home."  (*Id.* at PageID.42, ¶ 174).

[12] The case number is 20-1743.  (*Id.* at PageID.26, ¶ 98).

166).  The complaint was supported by the evidence collected by Defendants Lee and Henderson during the November 4 raid.  (*Id.* at PageID.40, ¶ 167).  Defendant Henderson executed an affidavit in support of the felony complaint which attested that "'approximately half' of the animals were malnourished, sickly and unhealthy." (*Id.* at PageID.62, ¶ 237).   These allegations were supported by Defendant Chickering.  (*Id.* at PageID.62, ¶ 238).  Plaintiff contends that prior to November 4, 2020, she fed the animals well.  (*Id.* at PageID.62, ¶ 239).  And that in January 2021, the United States Food and Drug Administration (FDA) issued a recall of certain dog foods, some of which Plaintiff had been feeding the dogs as "it was found to have been one of the brands contaminated with aflatoxin."  (*Id.* at PageID.63, ¶¶ 241–42).   Some of the symptoms associated with aflatoxin poisoning are "sluggishness or lethargy, loss of appetite, vomiting, yellow tint to eyes or gums, diarrhea and liver damage." (*Id.* at PageID.63, ¶ 243).  Aflatoxin can accumulate in a dog's system, causing delayed, and potentially fatal, poisoning.  (*Id.*).  Plaintiff contends that the symptoms of aflatoxin poisoning were complained of by Defendants Lee, Henderson, Maveal, Miller, Gage, and Chickering.   (*Id.* at PageID.63, ¶ 245).  She then contends that she fed her horses hay and another product which was later recalled due to contamination with aflatoxin.  (*Id.* at PageID.63, ¶ 247).  Defendant Chickering should have known about the recalls and was obligated to investigate all other potential causes for the animal's

11

malnourishment.  (*Id.* at PageID.63–64, ¶¶ 249–50).  The information regarding the recalls would have been exculpatory evidence, and Defendants Chickering and Henderson "intentionally and deliberately suppressed this exculpatory evidence." (*Id.* at PageID.64, ¶ 252).  During the same month, Plaintiffs were almost run off the road by MSP vehicles during a drive home.  (*Id.* at PageID.58, ¶ 225).

In February 2021, Defendant Miller filed a civil action against Plaintiffs titled Complaint for Forfeiture.  (*Id.* at PageID.55, ¶ 210).  However, neither she nor Defendant Peggy were arrested or bound over for trial on the criminal case filed the previous year (i.e., Case Number 20-1743 FY).  (*Id.* at PageID.55, ¶ 214).  Plaintiff argues the civil action was premature as they were not arrested or bound over in the criminal matter.  Plaintiff also states that Defendants Miller and Farrell engaged in inappropriate ex parte communication as demonstrated by a February 4, 2021 letter included in the civil case file.  (*Id.* at PageID.66, ¶ 255).  The communication references photo and video evidence Plaintiff never received.  (*Id.* at PageID.67, ¶¶ 258–59).  Further, it asks Defendant Farrell to grant the pending motion to forfeit the animals and ended with the plaintive plea "[p]lease help us help them."  (*Id.* at PageID.67, ¶ 261).  Defendant Farrell did exactly what was asked in the letter but should have known that "the warrants signed by" Defendant Worpel were biased. (*Id.* at PageID.67, ¶ 262).

Defendant Kreisher appeared on Plaintiff's behalf at the April 26, 2021 arraignment. (*Id.* at PageID.56, ¶ 215). Plaintiff contends this was the earliest date on which the criminal case could have been commenced, but it was not and thus there was no jurisdiction to file the civil case. (*Id.* at PageID.56, ¶¶ 215, 217). As a result, Defendant Farrell did not have jurisdiction to enter the order forfeiting her animals. (*Id.* at PageID.56, ¶ 218).

During the same month, Plaintiff was arraigned by Defendants Miller, Gage, and Farrell "on citations that don't exist," and an approximately $275,000 cash bond was issued.[13] (*Id.* at PageID.25, ¶ 93). The hearing involved Defendant Miller's attempt to deprive Plaintiff of her property rights to her animals and was on a motion for the forfeiture of the animals taken from her during the November 4 raid. (*Id.* at PageID.48, ¶ 187). She was not notified by Defendant Kreisher of the appearance nor permitted to confer with Defendant Kreisher prior to the beginning of the proceeding. (*Id.* at PageID.44, 48 ¶¶ 181, 187). She received notification of the appearance by some other means and attended the conference by Zoom. (*Id.* at PageID.48, ¶ 187). Plaintiff alleges Defendant Kreisher should have known that the misdemeanor charges were going to be dismissed as she was "present in the

---

[13] Plaintiff represents that the charges were "set to be dismissed by Prosecutor Miller September 26, 2019 which is time stamped and was filed in the court by Prosecutor Miller." (*Id.* at PageID.45, ¶181). The Complaint does not provide the Undersigned with additional details to decipher Plaintiff's allegation as to this issue.

courtroom via Zoom April 26, 2021." (*Id.* at PageID.45, ¶ 181).  Plaintiff contends that Defendant Kreisher's representation of her during the appearance was inadequate and ineffective as she did not (i) object to the excessive bail, (ii) file a motion to reduce the bail, (iii) move to quash the warrants made after the November 4, 2020 unlawful search, and seizure, or (iv) move to suppress the evidence collected during the raid.  (*Id.*).  Further, Plaintiff was blindsided as the proceeding started out as a criminal proceeding and then transformed into a civil forfeiture proceeding. (*Id.*).  And she was not permitted to speak during the hearing.  When she did, "the Zoom host, presumably defendant Judge Joshua M. Farrell, muted [her]." (*Id.* at PageID.53, 64–65, ¶¶ 203–04, 252).  At the conclusion of the hearing, Defendant Farrell approved the forfeiture of Plaintiff's animals, placed an excessive bail of $275,000 cash bond[14], denied Plaintiff the right to work in her trade, and deprived her of her property.  (*Id.* at PageID.53, ¶ 205).  Defendant Farrell signed his orders "without trial at 8:46 am on April 26, 2021, then again at around 10:36 am [and] with a trial he gave his verbal order." (*Id.* at PageID.53, ¶ 206).

Plaintiff's sister, Celecia Zlatkin, attempted to obtain a transcript of the April 26, 2021 hearing, but was informed that there was no audio recording or Zoom video

---

[14] Defendant Judge Farrell set bail on each misdemeanor ticket at $30,000, totaling $150,000, although the fines stated for the tickets was $60 each, and set bond on the felony case at $100,000, although the maximum fine for the case was $10,000.  (*Id.* at PageID.48, ¶¶ 187, 188).  Plaintiff contends that the bail was excessive.  (*Id.* at PageID.48, ¶ 188).

of those proceedings.  (*Id.* at PageID.50, ¶¶ 194–95).  Plaintiff alleges Defendants Farrell and Coon "deliberately and intentionally discriminated against Plaintiff Sharon Zlatkin by not making a record of the proceedings in her particular cases [on] April 26, 2021."  (*Id.* at PageID.51, ¶ 198).

Plaintiffs requested a motion in limine to suppress all of the alleged evidence supporting the criminal and civil complaints, charges and forfeiture because it was tainted by the unlawful November 4th warrantless search and seizure, and biased magistrate in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments of the U.S. Constitution.  (*Id.* at PageID.42, ¶ 175).

Plaintiff also alleges that she was targeted by all Defendants because (i) "they perceive . . . her last name is Jewish," (ii) she is a lesbian, and (iii) she is a single woman without children.  (*Id.* at PageID.74, ¶ 287).  Further, she alleges that she is a member of a protective class with a learning disorder that is trying to make a living raising and training animals on a farm in Gladwin County.  (*Id.*).  And that Plaintiff Peggy was subjected to elder abuse as her food was stolen.  (*Id.*).

As a result of Defendants' actions, Plaintiffs have "suffered injuries and damages including but not limited to loss of reputation, fear of dying, potential loss of earnings and earning capacity, loss of career opportunities, esteem in the community, mental and emotional trauma and los[s] of ordinary pleasures of life."

(*Id.* at PageID.30, ¶ 117).   Plaintiff seeks monetary, injunctive, and declaratory relief.  (*Id.* at PageID.75–78).

Plaintiff's complaint is at times difficult to decipher but as best the Court can discern, Plaintiff's claims appear to be as follows:

| Count | Alleged Constitutional Violation |
|---|---|
| I | 18 U.S.C. § 241 – Conspiracy Against Rights <br><br> 18 U.S.C. § 242 – Deprivation of Rights Under Color of Law |
| II | Fourth Amendment – Unlawful Search and Seizure |
| III | Sixth Amendment (Ineffective Assistance of Counsel <br><br> Fourteenth Amendment (Due Process Claim) |
| IV | Eighth Amendment (Excessive Bail) <br><br> Fourteenth Amendment (Due Process Claim) |
| V | Fifth Amendment (Denied Right to Be Heard) <br><br> Fourteenth Amendment (Due Process Claim) |
| VI | Fifth Amendment (Lack of Jurisdiction) <br><br> Fourteenth Amendment (Due Process Claim) |
| VII | Fourteenth Amendment <br><br> State Claims – Defamation, Harassment and False Light |
| VIII | There is no count VIII in Plaintiff's Complaint |
| IX | Right to Privacy <br><br> First Amendment (Retaliation) |

| X | Fifth Amendment (Brady Violation) |
| | Fourteenth Amendment (Due Process Claim) |
| XI | Fifth Amendment (Ex Parte Communication) |
| | Fourteenth Amendment (Due Process Claim) |
| XII | 18 U.S.C. § 241 – Civil Conspiracy |

On January 12, 2024, Defendant Chickering filed a Motion to Dismiss in Lieu of an Answer.  (ECF No. 22).  On February 12, 2024, Defendant Henderson filed a Motion to Dismiss in Lieu of An Answer.  (ECF No. 34).  Both motions are fully briefed and ready for adjudication.

### C. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  When considering whether a complaint states a claim, "[t]he courts must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief."  *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).  Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556

17

(2007); *see* Fed. R. Civ. P. 12(b)(6).  A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allaim*, 478 U.S. 265, 286 (1986)).  The requirement to provide a plausible claim does not require that a claim be probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

For the purposes of a 12(b)(6) motion, the Court may consider (i) documents referenced in, or attached to, the complaint and central to the plaintiff's claims; (ii) matters of which a court may properly take notice; and (iii) public documents and records. *Devlin v. Kalm*, 531 F. App'x 697 (6th Cir. 2013); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *Costell v. Bank of New York Mellon*, 2013 WL 317746 (E.D. Mich. 2013); *Meyer v. Citimortgage, Inc.*, 2012 WL 511995 (E.D. Mich. 2012); *Clark v. Stone*, 989 F.3d 287, 297 (6th Cir. 2021).  Thus, this

18

Court may consider the November 4, 2020 search warrant along with the opinions and orders issued in the related state-court civil and criminal actions without converting the motion into one for a motion for summary judgment.  (ECF No. 22-2, 34-1).  However, the Court need not consider all of the exhibits attached to Plaintiff's response as a number of the documents are unclear (e.g., screenshot of a phone call (ECF No. 33, PageID.615) or do not involve Defendant Chickering (e.g., Gladwin County Board of Commissioners COW Minutes, October 26, 2021 (*Id.* at PageID.612–13)).   *Clark*, 998 F.3d at 297 (finding the district court appropriately limited their review of the documents submitted as documents submitted by the plaintiffs did not relate to the facts of the underlying case); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. June 9, 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.") (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### D. Analysis

#### 1. Defendant Chickering's Motion to Dismiss

Defendant Chickering, a former State employee and Senior Field Veterinarian for the Michigan Department of Agriculture and Rural Development, argues she

should be dismissed from this action as (i) she is entitled to qualified immunity, (ii) Plaintiffs failed to state a claim as to the Fifth Amendment (due process) constitutional violation, (iii) Plaintiffs failed to state a viable civil conspiracy claim, and (iv) several of Plaintiffs' claims are subject to dismissal due to abstention legal doctrines (i.e., *Rooker-Feldman* and *Younger*). (ECF No. 22).

According to Plaintiffs, Defendant Chickering should be held liable based on her involvement in the acquisition of the search warrant and the search of the property where Defendant Chickering observed, inspected, and evaluated the condition of the animals and facilities on Plaintiff's property. Plaintiffs' causes of action against Defendant Chickering comprise of Count I (18 U.S.C. § 241, 242 - Civil Conspiracy), Count II (42 U.S.C. § 1983 and Fourth Amendment – Unlawful Search and Seizure), Count X (42 U.S.C. § 1983 – Brady Violation, Fifth Amendment, and Fourteenth Amendment (Due Process Claim)), and Count XII (18 U.S.C. § 241 – Civil Conspiracy).

Below please find a short recitation of the allegations lodged against Defendant Chickering:

Count I (Civil Conspiracy)

    i.   Defendant James Maveal, Gladwin County purported Animal Control Officer, colluded with willfully and wantonly organize all of the following who participated in the raid November 4, 2020, **Senior Field Staff Vick[i] Chicke[r]ing, Michigan Department of Agriculture and Rule Development**, RuAnn Hicks of Roscommon, Catherine Lemunyon of Standish, Michigan Arena Animal Control, Beth

Wellman, Midland Humane Society, Officers from Saginaw, Animal Control Officers from Bay City, and Missaukee County Humane Society, Dr. Jan Pol Veterinarian, Raymond Evans, Nicole Rayce, Aden Yoder, and Lenon Wheeler, Jenny Lanvers, Lee Zielinski, Nicole Rayce acting willfully and wantonly in concert jointly with Defendant James Maveal.  Defendant James Maveal [initiated] other raids on Plaintiff Sharon Zlatkin and used the MSP for these raids several times prior to November 4, 2020 which were unfounded.

(ECF No. 1, PageID.20–21, ¶ 75) (emphasis added).

> Count II (42 U.S.C. § 1983 and Fourth Amendment – Unlawful Search and Seizure)

> ii.    Defendant James Maveal Gladwin County purported Animal Control Officer, colluded with and willfully organize all of the following who participated in the raid November 4, 2020, **Senior Field Staff Vick[i] Chicke[r]ing, Michigan Department of Agriculture and Rule Development**, RuAnn Hicks of Roscommon, Catherine Lemunyon of Standish, Michigan Arena Animal Control, Beth Wellman, Midland Humane Society, Officers from Saginaw, Animal Control Officers from Bay City, and Missaukee County Humane Society, Dr. Jan Pol Veterinarian, Raymond Evans, Nicole Rayce, Aden Yoder, and Lenon Wheeler, Jenny Lanvers, Lee Zielinski, Nicole Rayce acting willfully and wantonly in concert jointly with Defendant James Maveal.

(*Id.* at PageID.33, ¶ 131) (emphasis added).

> iii.    It was a deliberate and intentionally pre-planned and well-orchestrated operation.  (Footnote: "Except they did not get a warrant beforehand."). In collusion were Defendant James Maveal who colluded with **Senior Field Staff Vick[i] Chicke[r]ing, Michigan Department of Agriculture and Rule Development**, . . . acting willfully and wantonly in concert jointly with Defendant James Maveal.

(*Id.* at PageID.39, ¶ 163) (emphasis added).

> Count X – Fifth and Fourteenth Amendments (*Brady* Violation)

    iv.    In the Affidavit in Support of the felony complaint Defendant Trooper Justin Ronald Henderson says, among other things, that "approximately half" of the animals were malnourished, sickly and unhealthy.

    v.    **These allegations are allegedly supported by the opinion of defendant Vicki Sue Chickering DVM**, Michigan State Department of Agriculture Senior Field Staff Veterinarian.

    vi.    **Dr. Chickering** and Trooper Henderson **intentionally and deliberately suppressed this exculpatory evidence** which is a violation of Sharon right to a fair and impartial trial under the 5th and 14th Amendment to the U.S. Constitution, irrespective of the good faith or bad faith of the prosecution.  Defendant Judge Joshua M. Farrell muted me when I tried to testify about this.  This violation was caused by the conduct alleged in this Court.

(*Id.* at PageID.62, 63–65 ¶¶ 237, 238, 252 ) (emphasis added).

<u>Count XII 18 U.S.C. § 241 – Civil Conspiracy</u>

    vii.    Defendant James Maveal, Gladwin County purported Animal Control Officer, colluded with wantonly and willfully organized all of the following who participated in the raid November 4, 2020, the co-conspirators are as following: . . . **Senior Field Staff Vick[i] Chicke[r]ing, Michigan Department of Agriculture and Rule Development**, . . . acting in concert jointly with Defendant James Maveal. . . .

(*Id.* at  PageID.71 ¶ 277 ) (emphasis added).

> **i.**    **Defendant Chickering is Not Entitled to Qualified Immunity**

Plaintiff alleges that Defendant Chickering colluded with Defendant Maveal, along with other individuals, to organize the November 4 raid but that a warrant was not obtained beforehand.  (ECF No. 1, PageID.33, 39 ¶¶ 131, 163).   Defendant

Chickering contends that "[w]hile acting in her role as a State Senior Field Veterinarian, [she] presumptively receives immunity for acts committed in the course of her duties," and is "'entitled to rely on a **judicially secured warrant** for immunity from a § 1983 action for illegal search and seizure.'" (ECF No. 22, PageID.357, 358 (first citing *Yancey v. Carroll Cnty., Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989; and then citing *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986))) (emphasis added).  And her conduct did not violate Plaintiffs' Fourth Amendment rights.  (*Id.* at PageID.358).

The Fourth Amendment protects the people from "unreasonable" government searches.  U.S. Const. Amend IV.  And, as a general rule, the curtilage of a home is protected by the Fourth Amendment.  *See United States v. Dunn*, 480 U.S. 294, 300 (1987); *see also Florida v. Jardines,* 569 U.S. 1, 6 (2013) (noting that the area "immediately surrounding and associated with the home" is "part of the home itself for Fourth Amendment purposes" (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984))).  "Reasonableness" is a term that eludes "precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  And in any Fourth Amendment context, determining the reasonableness of a search ultimately requires courts to balance the intrusiveness of a search against the government's justifications for both "initiating" the search and for conducting the search in a particular manner.  *Id.*  "'[A] search conducted without a warrant issued upon

probable cause is *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *United States v. Doxey*, 833 F.3d 692, 703 (6th Cir. 2016) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). In most instances, the warrantless search of a home is both unconstitutional and unreasonable. *Kyllo v. United States*, 553 U.S. 27, 31 (2001) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)).

To hold an individual liable in their individual capacity under § 1983, Plaintiffs must show that they were personally involved in the alleged constitutional deprivations. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). To do so, Plaintiff "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). "Persons sued in their individual capacities under § 1983 can be held liable only on their own unconstitutional behavior." *Id.*; *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Qualified immunity is an affirmative defense that extends to government officials performing discretionary functions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). Under this exception, government officials are immune from

24

civil liability when acting in an official capacity if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. This court applies a two-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) whether the plaintiff has shown a violation of a constitutionally protected right; and if so, (2) whether that right was clearly established such that a reasonable official would have understood that his behavior violated that right. *See Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998).

Plaintiffs and Defendant Chickering agree that during the relevant time period, Defendant Chickering was an employee of the State of the Michigan. (ECF No. 1, PageID.71 ¶ 277; ECF No. 22, PageID.361). And as such, may assert a qualified immunity defense. However, the availability of a qualified immunity defense does not result in immediate entitlement to its protection.

Initially, I will assess whether Plaintiffs have shown a violation of a constitutionally protected right. As discussed above, "'a search conducted without a warrant issued upon probable cause is *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Doxey*, 833 F.3d at 703; *Kyllo*, 553 U.S. at 31. While Defendant Chickering is correct that a government official may use the qualified immunity defense when they rely upon a valid warrant, such an argument cannot be used at the motion to dismiss stage to protect said

25

official when a plaintiff alleges that a warrant was not issued at the time of the search.[15]  *See Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 334–45 (1986)) ("In § 1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant" unless "the warrant is so lacking in the indicia of probable cause that [the officer]'s reliance on the warrant is unreasonable."); *Nosse v. City of Ann Arbor, Michigan*, No. 22-11283, 2023 WL 2250621, at *8 (E.D. Mich. Feb. 27, 2023); *Mills v. City of Barbourville*, 389 F.3d 568, 577 (6th Cir. 2004).

While Defendant Chickering included a copy of the November 4, 2020 Dutcher Road Search Warrant at issue in the case to her motion, the document itself does not demonstrate that a warrant was issued before the search commenced.  First, while the date lines on both the affidavit and the warrant reflect that they were executed on November 4, 2020, it is not clear whether they were executed before or after the search began.  (ECF No. 22-2, PageID.377, 378).  Second, the facsimile

---

[15] Defendant Chickering does not allege that entry unto the property was made due to exigent circumstances or that the search and seizure was conducted due to an arrest effectuated by police officials.  Instead she contends a valid search warrant was issued and relies upon this warrant to support her entitlement to qualified immunity and as such the search warrant exceptions need not be discussed.  Had Defendant Chickering raised the argument that in the absence of a valid warrant exigent circumstances existed which justified the warrantless search, the Undersigned's analysis may have differed.  *See Sanders v. Genesee Cty.*, No. 20-cv-13014, 2021 WL 457549, at *3 (E. D. Mich. Feb. 9, 2021) (Plaintiff's absence from the residence at the time of the officer's arrival coupled with the officers' "observations of extreme heat, animals in distress, and no adequate food or water available, are sufficient to suggest the existence of exigent circumstances.") (citing *United Pet Supply, Inc. v. City of Chattanooga, Tenn.*, 768 F.3d 464, 490 (6th Cir. 2014)).

timestamp indicates that the signed warrant was transmitted at 11:51 am but it is not clear to whom the facsimile was sent. And absent a facsimile cover page, the undersigned cannot deduce where the warrant was faxed to and if Defendants Lee and Henderson received the warrants. (*Id.* at PageID.375–78). Third, the accompanying November 4 Affidavit for Search Warrant includes three paragraphs which indicate that a separate search warrant was executed at approximately 9 am on November 4 by "Investigators from the Michigan State Police, Michigan Department of Agriculture and Gladwin County Animal Control" but that warrant is not included as an attachment. (*Id.* at PageID.377). Furthermore, this affidavit indicates that Defendant Chickering was present during the execution of the other warrant around 9 am. (*Id.*).

11-04-20;11:51AM;GLADWIN CO FA

there must have been stacks of dogs inside because the structure was not very large for the number of animals, she believed she could hear. She also observed numerous empty dog crates outside of that building.

19. ▓▓▓▓▓▓ indicated she is an animal person and feels something is wrong at the 2699 Dutcher Road address. She further indicated she feels there is animal hoarding occurring.

20. Based on the Affiant's experience and training, if a person is abusing, neglecting, or cruelly treating animals, then it is likely that that person is also treating other animals in a similar fashion.

21. A search warrant is a common tool used in similar investigations and would further this investigation.

22. It is the opinion of the Affiant that evidence seized from this search warrant would further the investigation into the possible abuse/neglect/cruelty to animals contained within the listed property and necessary to the animal's well-being.

23. On November 4, 2020 at approximately 9:00 a.m., Investigators from the Michigan State Police, Michigan Department of Agriculture and Gladwin County Animal Control executed a search warrant at 2699 Dutcher Road. Investigators found numerous animals to have unhealthy and unsanitary living conditions. Several animals were also found to be emaciated and malnourished. In addition to those findings, Officers found the remains of approximately a dozen animals that were under the care of Sharron Zladkin. These animals were found unburied, above the ground, and in plain sight during the execution of the search warrant. The remains were found to be disposed of some recently, still having fur on them. Others were skeletal remains, leading investigators to believe the disposing of these remains has been ongoing for an extended period of time. The location of most of these remains appeared that the animals had been led to the location where they had been euthanized. The areas were inaccessible by tractors or motorized equipment.

24. Furthermore, investigators found dogs to be living in stalls near some of the remains. Kennels were found in many cases to be undersized for the respective animals. Additionally, the animals were noted to not have access to water and the food that was available to supply nutrition to the animals was found to be rotten and moldy.

25. Investigators observed there to be a lack of on hand food for any of the large animals. The food that was estimated by Vicki Chickering, Senior Field Veterinarian, Agricultural Department, was estimated to only provide a food source for three days maximum.

26. Further inspection by Vicki Chickering, and investigators, resulted in the finding of in excess of 70 animals. Some of which include dogs, cats, cows, horses, sheep and goats. The animals according to the estimate provided by Vicki Chickering, several of these animals were in need of immediate veterinary care.

Further, Affiant sayeth not.

(*Id.*).  And yet, she does not attach the other warrant.  Instead she elects to rely upon a warrant that issued subsequent to the 9 am search, and includes no explanation as to why.  (ECF No. 22, PageID.360 ("Dr. Chickering did not swear to the search warrant for Plaintiff's property. She simply assisted in executing the search warrant, which was approved by a prosecutor and signed by a magistrate.  Dr. Chickering was entitled to rely on a judge/magistrate's finding of probable cause.") (internal citations omitted).  This fact only bolsters Plaintiff's allegations that at the time the search began, around 9 am, no warrant had been issued.  (ECF No. 1, PageID.39, ¶

163).  Thus, the complaint sufficiently alleges that Defendant Chickering violated Plaintiffs' rights by conducting the search of their property without a warrant.

Next, I will assess whether that right was clearly established such that a reasonable official would have understood that his behavior violated said right. "[A]n officer's entry onto private property to seize a dog must obey the Fourth Amendment's strictures." *Hardrick v. City of Detroit, Mich.*, 876 F.3d 238, 246 (6th Cir. 2017).  And absent a warrant or a Fourth Amendment exception such as exigent circumstances, government officials do not have a right to enter an individual's property and seize their animals (e.g., dogs). *Sanders v. Genesee Cnty.*, 605 F. Supp. 3d 969, 981 (E. D. Mich. 2022).

Defendant Chickering places all of her eggs in the valid warrant basket and in light of the finding that Plaintiff has alleged sufficient facts to demonstrate that a warrant did not exist at the time Defendant Chickering entered her property, the Undersigned finds that Plaintiff's right to be free from unreasonable searches and seizures was clearly established and a reasonable official would have understood that entering the property without a warrant violated said right. *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (2016) ("[T]here is a constitutional right under the Fourth Amendment to not have one's dog unreasonably seized.").

Taking Plaintiff's allegations as true and liberally construing them, Plaintiff proffers sufficient factual allegations to demonstrate that Defendant Chickering is not entitled to qualified immunity.

> ii.   **Plaintiffs Fail to State a Viable Cause of Action as to their Fifth Amendment and Fourteenth Amendment *Brady* Claims**

Plaintiff alleges that Defendant Chickering failed to rule out other causes for the conditions she observed during the November 4 raid (i.e., emaciated and malnourished animals) by testing the feed, testing the animals, or exploring any other possible causes.  (ECF No. 1, PageID.62, ¶ 237–38).  And that she suppressed exculpatory evidence of recent animal food recalls due to contamination in violation of Plaintiff's Fifth Amendment (Due Process) and Fourteenth (Due Process) Amendment rights, and *Brady v. Maryland*, 373 U.S. 83 (1963) (Count X).  (ECF No. 1, PageID.63–64, ¶¶ 241–252).

"The Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."  *Newsom v. Vanderbilt Univ.*, 653 F.2d 1100,1113 (6th Cir. 1981); *see also Bybee v. City of Paduch*, 46 F. App'x 735, 737 (6th Cir. 2002) (citing *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977);).  Thus, Plaintiff does not allege a viable Fifth Amendment claim against Defendant Chickering as she was a Michigan State employee at the time of the incident.

Next, we turn to Plaintiff's Fourteenth Amendment due process constitutional violation, under which she argues that Defendant Chickering withheld exculpatory evidence in violation of *Brady*. The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To establish a due process violation under *Brady* "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The ultimate purpose of a *Brady* claim is to ensure that "criminal defendants receive a fundamentally fair trial." *Moldowan v. City of Warren*, 578 F.3d 351, 378 (6th Cir. 2009) (internal quotation marks omitted). Thus, the Sixth Circuit has held "that liability for a *Brady* violation only exists when evidence sufficient to put the whole case in such a different light as to undermine confidence in the *verdict* is improperly withheld." *Snow v. Nelson*, 634 F. App'x 151, 157 (2015) (emphasis in original) (internal quotation marks omitted) (citing *Johnson v Mitchell*, 585 F.3d 923, 933 (6th Cir. 2009) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995))). "Further, there is no *Brady* violation . . . if the information was available to [the defendant] from another source." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (internal quotation marks omitted).

Plaintiffs have not identified evidence that was withheld by Defendant Chickering. Their allegations amount to nothing more than the alleged knowledge they believe Defendant Chickering should have possessed, and the additional actions she should have undertaken before rendering her opinion. (ECF No. 1, PageID.63–64, ¶¶ 248, 249); *O'Connell v. Straub*, 81 F. App'x 571, 573 (6th Cir. 2003) (finding plaintiff failed to allege a *Brady* violation as there were no facts to support the allegation that the prosecutors suppressed evidence and the record showed the prosecutor was "unaware" of the evidence). Plaintiffs allege Defendant Chickering should have had knowledge of the recalls, but do not include factual allegations in their complaint alleging she in fact had knowledge, documents, or reports regarding the recalls. Moreover, as liability for a *Brady* violation may only exist "when evidence sufficient to put the whole case in such a different light as to undermine confidence in the *verdict*," and the Plaintiffs here have not had a criminal trial, liability cannot attach. *Snow*, 634 F. App'x at 157 (emphasis in original) (internal quotation marks omitted) (citing *Johnson*, 585 F.3d at 933 (quoting *Kyles*, 514 U.S. at 435)).

And on a separate note, the fact that the information regarding the recalls was available to Plaintiffs through another source (i.e., the United States Food and Drug Administration ("FDA")) as demonstrated in their Complaint weighs against finding that the information was withheld from them. *Graham*, 484 F.3d at 417; *Coe v. Bell*,

161 F.3d 320, 344 (6th Cir. 1998) (There is no *Brady* violation where the evidence is available from another source); *United States v. Santisteban*, 501 F.3d 873, 877 (8th Cir. 2007) (alterations omitted) ("The government does not suppress evidence in violation of *Brady* by failing to disclose evidence to which the defendant had access through other channels.") (quoting *United Sates v. Zuazo*, 243 F.3d 428, 431 (8th Cir. 2001) (internal quotation marks omitted).

### iii. Plaintiff Fails to Plead Her Civil Conspiracy Claim with Specificity

In sum, Plaintiffs allege that Defendant Chickering colluded with Defendant Maveal, along with others and nothing more (Count I). The paragraph below sums up the "factual allegations" proffered by Plaintiff to support her civil conspiracy claim as to Defendant Chickering.

> viii. Defendant James Maveal Gladwin County purported Animal Control Officer, colluded with willfully and wantonly organize all of the following who participated in the raid November 4, 2020, **Senior Field Staff Vick[i] Chicke[r]ing, Michigan Department of Agriculture and Rule Development**, RuAnn Hicks of Roscommon, Catherine Lemunyon of Standish, Michigan Arena Animal Control, Beth Wellman, Midland Humane Society, Officers from Saginaw, Animal Control Officers from Bay City, and Missaukee County Humane Society, Dr. Jan Pol Veterinarian, Raymond Evans, Nicole Rayce, Aden Yoder, and Lenon Wheeler, Jenny Lanvers, Lee Zielinski, Nicole Rayce acting willfully and wantonly in concert jointly with Defendant James Maveal. Defendant James Maveal [initiated] other raids on Plaintiff Sharon Zlatkin and used the MSP for these raids several times prior to November 4, 2020 which were unfounded.

(ECF No. 1, PageID.20–21, ¶ 75) (emphasis added).

A conspiracy under § 1983 is an "agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (internal quotation marks omitted) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).  To establish a conspiracy, a plaintiff "must show that (1) a 'single plan' existed, (2) [the defendants] 'shared in the general conspiratorial objective' to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) 'an overt act was committed in furtherance of the conspiracy that caused injury' to [the plaintiff]." *Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 842 (N.D. Ohio 2009).

Plaintiffs come nowhere near making such a showing.  There are no factual allegations of a single plan or that Defendant Chickering shared in the general conspiratorial objective.  Aside from the Paragraphs 75, 131, 163, and 277 which are in essence identical and nothing more than conclusory statements, there is no other mention of Defendant Chickering working, interacting, communicating or conspiring with Defendant Maveal much less any of the other named defendants. (*See generally* ECF No. 1, PageID.20–21, 33, 39, 71 ¶¶ 75, 131, 163, 277).

There are only two factual allegations that could be seen as supporting Plaintiffs' civil conspiracy claim. First, the allegation that the statements in Defendant Henderson's Affidavit in Support of the felony complaint as to the condition of approximately half of the animals was supported by the opinion of Defendant Chickering. Second, that Defendants Chickering and Henderson suppressed the exculpatory evidence of the contaminated food. (ECF No. 1, PageID.62, ¶¶ 237, 238). But this alone is not enough. Supplying an opinion based on one's observation of the condition of animals alone does suggest that a conspiracy is afoot. And as discussed above, Plaintiff has failed to allege that exculpatory evidence was suppressed. (*Supra* § II(D)(1)(ii)). Even by any stretch of the imagination it is impossible to find that these allegations are sufficient to support a cause of action for civil conspiracy. In sum, Plaintiffs' allegations of conspiracy are conclusory and not supported by material facts. And it is well supported that conclusory allegations, unaccompanied by factual support, are insufficient to state a conspiracy claim under § 1983. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1988); *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003). Accordingly, Plaintiffs' civil conspiracy claims (Count I) against Defendant Chickering should be dismissed.

Last, Plaintiffs cannot sustain a claim for civil liability per 18 U.S.C. § 241 (Count XII) as this statute does not provide a basis for civil liability. *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003); *see McLeod v. Bryant*, No. 2:22-

cv-10729, 2023 WL 4061661, at *4 (E.D. Mich. Apr. 5, 2023) (Section 241 does not

provide a private cause of action); *see also Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir.

1989).

Further, as 18 U.S.C. §§ 241 and 242 do not provide private causes of action,

this claim should be dismissed as to all defendants.

### iv. Plaintiffs' Federal Causes of Action Related to the Civil Forfeiture are Barred by *Rooker- Feldman*

Defendant Chickering contends that Plaintiffs' claims which relate to the

forfeiture of her animals are barred by the *Rooker-Feldman* doctrine on the basis that

a judgment was entered against Plaintiffs on April 26, 2021 in the civil forfeiture

proceedings.[16]   Although Defendant Chickering does not identify which count or

counts she is referring to, based on a review of complaint, only Counts IV (Eighth

Amendment Excessive Bail), Count V (Fifth Amendment Due Process Claim), and

Count VI (Fifth Amendment Due Process Claim) involve relevant claims which may

be subject to the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine prohibits federal courts below the United States

Supreme Court from exercising "appellate jurisdiction over the decisions and/or

proceedings of state courts, including claims that are 'inextricably intertwined' with

issues decided in state court proceedings." *Exec. Arts Studio, Inc. v. City of Grand*

---

[16] ECF No. 22, PageID.350 n. 2 (citing Register of Actions for Gladwin County
District Court Case No. 2021-21-30211-GZ.

*Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted). The doctrine stands for the proposition that "the lower federal courts do not have jurisdiction 'over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Raymond v. Moyer*, 501 F.3d 548, 550–51 (6th Cir. 2007) (quoting *Lance v. Dennis*, 546 U.S. 459, 460 (2006)). And is based on the notion that only the Supreme Court has jurisdiction to review state court judgments. *See* 28 U.S.C. § 1257. Accordingly, the federal district courts lack jurisdiction over two types of cases originating in state court: (1) cases where appellate remedies have been exhausted in state court, and issues raised and decided in the state courts are presented to the federal district courts for reconsideration; and (2) cases where the federal claims asserted turn so directly on state court judgments that the federal district courts must review the state court judgments to resolve the federal claims. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1522–24 (2005).

      **a.** Count IV (Eighth Amendment – Excessive Bail)

Plaintiffs claim that at the end of the April 26 hearing before Defendant Farrell, he approved the forfeiture of her animals, placed an excessive bail of $275,000[17] cash bond, denied Sharon the right to work in her trade, and took away

---

[17] Defendant Judge Farrell set bail on each misdemeanor ticket at $30,000, totaling $150,000, although the fines stated for the tickets was $60 each, and set bond on the felony

her property.  (ECF No. 1, PageID.53, ¶ 205).  Sharon contends that the bail amount set violates the Eighth Amendment as it was excessive.  Plaintiff had the opportunity to pursue such claims through the state appellate process but it appears that she elected not to.  She cannot "now use 42 U.S.C. § 1983, or any other avenue, to receive the equivalent of another round of appellate review of this newly articulated claim  in federal district court."  *Cassell v. County of Ramsey*, No. 15-2598 (PJS/JJK), 2015 WL 9590802, at *8 (D. Minn. Dec. 11, 2015); *Ingram v. Fish*, No. 09-204, 2010 WL 3075747, at * 4 (W.D. Penn. Aug. 5, 2010) ("Plaintiff cannot seek review of Defendant's bail order in this court under the guise of a civil rights claim when his state court requests seeking the same relief have already been denied. Such review is barred by the *Rooker-Feldman* doctrine.").  Thus, as the imposition of bail was associated with the state court's order the Undersigned suggests that this Court does not have jurisdiction to adjudicate this matter under *Rooker-Feldman* and Count IV of Plaintiff's claim should be dismissed.

In the alternative, even if this Count was not barred due to *Rooker-Feldman*, Count IV should be dismissed as it is lodged against Defendant Farrell, who is a judicial officer, and entitled to absolute judicial immunity from damages suit when the acts complained of occurred while performing judicial duty. *See Pierson v. Ray*,

---

case at $100,000, although the maximum fine for the case was $10,000. (*Id.* at PageID.48, ¶¶ 187, 188).  Plaintiff contends that the bail was excessive. (*Id.* at PageID.48, ¶ 188).

386 U.S. 547 (1967).  Judicial immunity applies to actions commenced under 42 U.S.C. § 1983 for alleged deprivation of civil rights.  *Id.* at 554–55.  There are two scenarios under which absolute judicial immunity is overcome: (i) a situation where a judge is performing a non-judicial act, and (ii) a situation where a judge has performed a judicial act but in the absence of all jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).  Defendant Farrell's act of imposing bail during a criminal proceeding qualifies as a judicial act taken while he was within his jurisdiction to do so and thus is protected by absolute judicial immunity.[18]

### b.  Count V (Fifth Amendment Due Process)

Count V should also be dismissed as it pertains to Plaintiff's complaint that she was muted during the proceedings and not permitted to speak.  (ECF 1, PageID.53, 64–65, ¶¶ 203–04, 252).  This complaint involves how Defendant Farrell conducted his proceedings.  And while Sharon may not have been permitted to speak, she admits that she was represent by counsel, Defendant Kreisher, during that proceeding who spoke on her behalf.  (*Id.* at PageID.45, ¶¶ 181, 215).  And while she may have been dissatisfied with Defendant Kreisher's representation, she was not denied due process merely because she was not allowed to speak during the Zoom proceeding.  Further, Defendant Farrell's decision to mute her during the

---

[18]  While Plaintiffs contend that Defendant Farrell did not have jurisdiction to oversee the April 26, 2021 proceedings, the 80th District Court, Gladwin County, along with the complaint show otherwise.  (*Infra* Section II(D)(1)((iv)(c)).

proceeding, while her counsel was present, was an act taken in his judicial capacity

and thus he is entitled to judicial immunity.  Thus, the Undersigned recommends

that Count V be dismissed.

### c.  Count VI (Fifth Amendment)

Plaintiffs represent that Defendant Farrell did not have jurisdiction to enter

the Order Forfeiting Animals on April 26 because the criminal action had not been

commenced but do not include any caselaw or statutory citation to support this

proposition.  (ECF No. 1, PageID.55, ¶¶212–13).  This statement quite frankly

amounts to nothing more than a conclusory statement.  Her only reference to support

this contention is that "[u]nder Michigan law a criminal complaint is not commenced

by issuing a complaint and warrant alone; it is triggered when the defendant is

afterwards arrested upon the warrant and bound over for trial."  (ECF No. 1,

PageID.55, ¶ 213).  While caselaw exists supporting the contention that a criminal

case is not a commencement of the action that will prevent the running of the statute

of limitations, this is not the same as the proposition that a "criminal complaint is

not commenced by issuing a complaint and warrant alone."  *People v. Clement*, 72

Mich. 116 (1888).

MCL 750.50(3), the statute under which Plaintiffs were charged for animal

cruelty, states

> If an animal is impounded and is being held by an animal
> control shelter or its designee or an animal protection

40

> shelter or its designee or a licensed veterinarian **pending the outcome of a criminal action charging a violation of this section or section 50b, before final disposition of the criminal charge**, **the prosecuting attorney may file a civil action in the court that has jurisdiction of the criminal action, requesting that the court issue an order forfeiting the animal to the animal control shelter or animal protection shelter** or to a licensed veterinarian before final disposition of the criminal charge.

Mich. Comp. Laws § 750.50(3) (2020) (emphasis added). No where in the statute does it state that the defendant must be arrested upon the warrant and bound over for trial before a civil forfeiture case can be commenced. Further, under Michigan law, "there is no need even to commence a criminal prosecution in order for a civil forfeiture action to be brought." *In re Forfeiture of $53*, 173 Mich. App. 480, 496 (1989).

The criminal case was commenced on December 16, 2020, Case No. 2020-20-1743-FY, the civil forfeiture case, Case No. 21-30211, was commenced on February 22, 2021, and the order was entered on April 26, 2021. (ECF No. 33, PageID.564–65). And a motion for reconsideration was denied on June 14, 2021. (*Id.* at PageID.565). Thus, Defendant Farrell had jurisdiction to issue the forfeiture order and is entitled to immunity from monetary damages in this suit. Further, as Defendant Farrell had authority to issue the civil forfeiture order, it is improper for Plaintiff to use the federal court to undermine the state court's order. Thus, Count VI is barred by *Rooker-Feldman. See Belock v. Burt*, 19 F. App'x 323, 324 (6th Cir.

41

2001) ("[T]he gist of [plaintiff's] federal complaint is that he is unhappy with the results of the state court proceedings. Federal courts lack jurisdiction over such a case."); *Roch v. Humane Soc'y of Bedford Cty., Tenn., Inc.*, 134 F. App'x 68, 71 (6th Cir. 2005) (Lawsuit was barred by *Rooker-Feldman* as the action related to the state court's decision to grant defendant authority to remove and/or euthanize dogs on plaintiff's property).

### v. *Younger* Abstention

Defendant Chickering contends that the Court should abstain under *Younger* from granting Plaintiff any relief related to the pending state criminal proceedings. (ECF No. 22, PageID.366–67). Plaintiff argues there is no pending criminal case.

"Under *Younger* abstention, absent unusual circumstances [], a federal court must decline to interfere with pending state civil or criminal proceedings where important state interests are involved." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) (citing *Younger v. Harris*, 401 U.S. 37 (1971)). *Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Younger*, 401 U.S. at 40–41.

If this Court were to grant the injunctive relief requested by Plaintiff, it would certainly interfere with the ongoing open state criminal proceeding.[19]  The relevant factors favor *Younger* abstention: "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017).  The case was filed on December 16, 2020 and is still pending.  The criminal prosecution is exactly the kind of state proceeding envisioned by *Younger*.  *See Younger*, 401 U.S. at 43; *Leveye v. Metro. Pub. Def.'s Office*, 73 F. App'x 792, 794 (6th Cir. 2003) ("[S]tate criminal prosecutions have traditionally been considered an arena in which federal courts decline to interfere.").  Once the trial proceedings commence,  Plaintiff will have a forum to address her constitutional issues.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 16 (1987); *Kelm v. Hyatt*, 44 F.3d 415, 421 (6th Cir. 1995) (holding that plaintiff must prove inadequacy of state-court procedures to warrant federal court intervention).  Further, none of Plaintiffs' allegations suggest that an exception to

---

[19] A review of the public records shows that Case 2020-20-1743-FY before the 80th District Court, Gladwin County, has a case status of "Open."  MiCourt Case Search, Case No. 2020-20-1743-FY, https://micourt.courts.michigan.gov/case-search/court/D80~2/case-details?caseId=2020-20-1743-FY-01&tenantKey=D80-26-0626857-00-00&searchUrl=%2Fcourt%2FD80~2%2Fsearch%3FfirstName%3D%26middleName%3D%26lastName%3DZlatkin%26birthYear%3D0%26caseNumber%3D%26caseYear%3D0%26caseType%3D%26page%3D1 (last accessed April 19, 2024).

*Younger* should apply.  *See Doe v. Univ. of Kentucky*, 860 F.3d 365, 371 (6th Cir. 2017) (noting that *Younger* exceptions include "bad faith, harassment, or flagrant unconstitutionality of the statute or rule at issue.").  Accordingly, I suggest that all three factors favor *Younger* abstention from Plaintiffs' constitutional claims associated with the ongoing state criminal proceedings.

Plaintiffs' Fourth Amendment unlawful search and seizure claim relates to the November 4, 2020 search and the allegation that Defendants did not have a warrant at the time of the search.  (ECF No. 1, PageID.34, ¶ 137).  These allegations are all connected to the ongoing criminal state court proceedings and as such this Court should not interfere with that proceeding.  *Marjamaa v. Mitchell*, No. 2:19-cv-197, 2019 WL 5853486, at *1 (W.D. Mich. Nov. 18, 2019) (declining to exercise jurisdiction over the claims in plaintiff's lawsuit which "challenge[d] a search warrant that relate[d] to a pending criminal case"); *Raab v. McLoed*, No. 2:19-cv-108, 2019 WL 2511221, at *3 (W.D. Mich. June 18, 2019) (declining to exercise jurisdiction over the claims in plaintiff's lawsuits which "challenge[d] a search warrant that relate[d] to a pending criminal case"); .

The Undersigned further recommends the Court stay Plaintiffs' Fourth Amendment cause of action (Count II) as the relief sought includes monetary damages, along with declaratory and injunctive relief.  *Bridley v. McCullen*, 61 F.3d 507 (6th Cir. 1995);  *Marjamaa*, 2019 WL 5853486 at *2 ("[W]here the only relief

sought by the plaintiff is damages, the Court 'must stay the case instead of exercising its discretion to dismiss the case.'" (citing *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013)); *Nimer*, 707 F.3d at 702 ("[B]ecause the United States Supreme court has held that '[u]nder our precedents, federal courts have the power to dismiss or remand cases based on abstention principles *only where the relief being sought is equitable or otherwise discretionary.*'") (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996)).

### 2. Defendant Henderson's Motion to Dismiss

Defendant Henderson is an MSP trooper.  (ECF No. 34, PageID.635).  His motion to dismiss is substantively identical to Defendant Chickering's, and he argues that he should be dismissed from this action as (i) he is entitled to qualified immunity, (ii) Plaintiffs failed to state a claim as to the Fifth Amendment (due process) constitutional violation, (iii)  Plaintiffs failed to state a viable civil conspiracy claim, and (iv) several of Plaintiffs' claims are subject to dismissal due to abstention legal doctrines (i.e., *Rooker-Feldman* and *Younger*).[20]  (ECF No. 34).

According to Plaintiffs, Defendant Henderson should be held liable based on his involvement in the acquisition of the search warrant, and the search of the property itself.  Plaintiffs' causes of action against Defendant Henderson comprise

---

[20] The issues concerning the civil conspiracy and abstention were discussed in the section above.  *Supra* Section II (D)(1).

45

of Count II (42 U.S.C. § 1983 and Fourth Amendment – Unlawful Search and Seizure), Count X (42 U.S.C. § 1983 – Brady Violation, Fifth Amendment, and Fourteenth Amendment (Due Process Claim)), and Count XII (18 U.S.C. § 241 – Civil Conspiracy).

Below please find a short recitation of the allegations lodged against Defendant Chickering:

<u>Count II (42 U.S.C. § 1983 and Fourth Amendment – Unlawful Search and Seizure)</u>

    i.    Defendant Trooper Lee left the farm almost immediately upon the arrival of [Plaintiff Peggy]. Trooper Lee and Trooper Henderson left the farm at approximately 10:35 am. This was the illegal warrantless unlawful search and seizure. This was an unconsented search.

    ii.    This Complaint was based upon alleged evidence gathered during the November 4th 2020 raid by defendants Troopers Robert Lee, III and Justin Ronald Henderson and others with no warrant.

(ECF No. 1, PageID.36, 40 ¶¶ 145, 167).

<u>Count X – Fifth and Fourteenth Amendments (*Brady* Violation)</u>

    i.    In the Affidavit in Support of the felony complaint Defendant Trooper Justin Ronald Henderson says, among other things, that "approximately half" of the animals were malnourished, sickly and unhealthy.

    ii.    These allegations are allegedly supported by the opinion of defendant Vicki Sue Chickering DVM, Michigan State Department of Agriculture Senior Field Staff Veterinarian.

    iii.    Dr. Chickering and **Trooper Henderson intentionally and deliberately suppressed this exculpatory evidence** which is a violation of Sharon right to a fair and impartial trial under the 5th and

14th Amendment to the U.S. Constitution, irrespective of the good faith or bad faith of the prosecution. Defendant Judge Joshua M. Farrell muted me when I tried to testify about this. This violation was caused by the conduct alleged in this Court.

(*Id.* at PageID.62, 63–65 ¶¶ 237, 238, 252 ) (emphasis added).

### i. Defendant Henderson is not Entitled to Qualified Immunity

Plaintiff alleges that Defendant Henderson entered Plaintiffs' property and participated in the raid without a judicially issued warrant. (ECF No. 1, PageID.40, ¶ 167). Defendant Henderson contends that he is entitled to qualified immunity as he relied on a search warrant when executing his duties during the November 4 raid. (ECF No. 34, PageID.648). As previously discussed, "'a search conducted without a warrant issued upon probable cause is *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Doxey*, 833 F.3d at 703; *see also Kyllo*, 553 U.S. at 31. And again, while Defendant Henderson is correct that a government official may use the qualified immunity defense when they rely upon a valid warrant, such an argument cannot be used at the motion to dismiss stage to protect said official when a plaintiff alleges that a warrant was not issued at the time of the search.[21] *See Hale*, 396 F.3d at 725 (6th Cir. 2005) (citing *Malley*,

---

[21] Again, Defendant Henderson does not allege that entry unto the property was made due to exigent circumstances or that the search and seizure was conducted due to an arrest effectuated by police officials. Instead he contends a valid search warrant was issued and relies upon this warrant to support his entitlement to qualified immunity and as such the search warrant exceptions need not be discussed. *Supra* n. 15.

475 U.S. at 334–45) ("In § 1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant" unless "the warrant is so lacking in the indicia of probable cause that [the officer]'s reliance on the warrant is unreasonable."); *Nosse*, 2023 WL 2250621 at *8; *Mills v. City of Barbourville*, 389 at 577.

Defendant Henderson has also included a copy of the November 4, 2020 Dutcher Road Search Warrant to his motion but again has not proffered statements or evidence to challenge Plaintiff's contention that the warrant was not issued before search commenced.  (ECF No. 34-1, PageID.661–64).  And thus the inclusion of the warrant does not defeat Plaintiff's contention and his argument suffers from the same ailments as Defendant Chickering's (i.e., the exhibit does show to whom the facsimile was sent, and includes statements detailing evidence collected on the day the warrant was executed).  (*Id.* at PageID.662–63).  Thus, the complaint sufficiently alleges that Defendant Henderson violated Plaintiffs' rights by conducting the search of their property without a warrant.

Next, I will assess whether that right was clearly established such that a reasonable official would have understood that his behavior violated said right. "[A]n officer's entry onto private property to seize a dog must obey the Fourth Amendment's strictures."  *Hardrick*, 876 F.3d at 246.  And absent a warrant or a Fourth Amendment exception such as exigent circumstances, government officials

do not have a right to enter an individual's property and seize their animals (e.g.,

dogs). *Sanders*, 605 F. Supp. 3d at 981.

Defendant Henderson also places all of his eggs in the valid warrant basket

and in light of the finding that Plaintiff has alleged sufficient facts to demonstrate

that a warrant did not exist at the time he entered Plaintiff's property, the

Undersigned finds that Plaintiff's right to be free from unreasonable searches and

seizures was clearly established and a reasonable official would have understood

that entering the property without a warrant violated said right. *Brown*, 844 F.3d at

566.

Taking Plaintiff's allegations as true and liberally construing them, Plaintiff

proffers sufficient factual allegations to demonstrate that Defendant Henderson is

not entitled to qualified immunity.

> ### ii. Plaintiffs Fail to State a Viable Cause of Action as to their Fifth Amendment and Fourteenth Amendment *Brady* Claims

Plaintiff alleges that Defendant Henderson intentionally and deliberately

suppressed exculpatory evidence of recent animal food recalls due to contamination

in violation of Plaintiff's Fifth Amendment (Due Process) and Fourteenth (Due

Process) Amendment rights, and *Brady v. Maryland*, 373 U.S. 83 (1963) (Count X)

(ECF No. 1, PageID.62, 64 ¶ 252 ).

As Defendant Henderson is a state employee, Plaintiff cannot allege a viable Fifth Amendment claim against him. *Newsom*, 653 F.2d at 1113 ("The Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."); *Walker*, 558 F.2d at 1257; *Bybee*, 46 F. App'x at 737 (citing *Sturgell*, 640 F.2d at 850).

Next, we turn to Plaintiffs' Fourteenth Amendment due process constitutional violation, under which she argues that Defendant Henderson withheld exculpatory evidence in violation of *Brady*. Plaintiffs have not identified evidence that was withheld by Defendant Henderson. Their allegations amount to nothing more than the alleged knowledge they believe he had as to the FDA recalls. (ECF No. 1, PageID.64, ¶ 252). There is no reference to exculpatory evidence withheld by Defendant Henderson. Moreover, as liability for a *Brady* violation may only exist "when evidence sufficient to put the whole case in such a different light as to undermine confidence in the *verdict*" and no trial has been held, liability cannot attach. *Snow*, 634 F. App'x at 157 (emphasis in original) (internal quotation marks omitted) (citing *Johnson*, 585 F.3d at 933 (quoting *Kyles*, 514 U.S. at 435)). And last, the fact that the information regarding the recalls was available to Plaintiffs through another source (i.e., FDA) as demonstrated in their Complaint weighs against finding that the information was withheld from them. *Graham*, 484 F.3d at 417.

### E. Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant Chickering's Motion to Dismiss (ECF No. 22) be **GRANTED IN PART**, and Defendant Henderson's Motion to Dismiss be **GRANTED IN PART** (ECF No. 34).

If this Report and Recommendation is adopted the following will occur:

i.    Counts I (18 U.S.C. §§ 241, 242 - Civil Conspiracy) will be dismissed;

ii.   Count II (42 U.S.C. § 1983 0 Fourth Amendment – Unlawful Search and Seizure) should be stayed;

iii.  Count IV (Eighth Amendment (Excessive Bail) and Fourteenth Amendment (Due Process)) will be dismissed;

iv.   Count V (Fifth Amendment (Denied Right to Be Heard) and Fourteenth Amendment (Due Process)) will be dismissed;

v.    Count VI (Fifth Amendment (Lack of Jurisdiction) and Fourteenth Amendment (Due Process)) will be dismissed;

vi.   Count  X (Fifth and Fourteenth Amendment (*Brady* Violation)) will be dismissed; and

vii.  Count XII (18 U.S.C. § 241 - Civil Conspiracy) will be dismissed.

The following counts will remain:

viii.   Count III (Ineffective Assistance of Counsel)

ix.   Count VII (Fourteenth Amendment and State law claims of false light,

defamation, and harassment);

x.   Count IX (First Amendment – Retaliation); and

xi.   Count IX (Ex Parte Communication and Fourteenth Amendment).

## III.   **<u>REVIEW</u>**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy."   Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant

52

to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 25, 2024                    S/ PATRICIA T. MORRIS
                                         Patricia T. Morris
                                         United States Magistrate Judge