UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

SHARON ROSE ZLATKIN, and

PEGGY ZLATKIN, Case No. 1:23-cv-12693

Plaintiffs, Honorable David M. Lawson

Vs. Mag. Judge Patricia T. Morris

GLADWIN COUNTY, STEVEN WORPELL,

ROBERT LEE, JUSTIN R. HENDERSON,

JAMES MAVEAL, JR., AARON MILLER,

NORMAN E. GAGE, VICKI SUE CHICKERING,

Defendants.

______________________________________________/

**PLAINTIFFS RESPONSE TO ORDER TO SHOW CAUSE**

**WHY STAY OF PROCEEDINGS MUST BE DISSOLVED**

**Plaintiffs denied that there are any outstanding warrants in the 80th District Court and or in 55th Circuit Court.**

**STATEMENT OF FACT**

1. This case was commenced to address Plaintiffs' complaints of a warrantless search and seizure upon their farm near Gladwin Michigan on November 4th 2020. It was timely filed on October 24, 2023. This case has been stayed since July 24th ,2024, see ECF No. 86, PageID 1658 , line 4, and PageID 1662 under the Fourth Amendment. This was because there was a criminal case against Sharon Zlatkin filed in the Michigan 80th District Court arising from the same subject matter as this federal case, under the Younger and Rooker-Feldman cases. Ibid. PageId 1651.
The November 4, 2020 raid was warrantless[ ECF No. 58 PageID 1113,1116] Per Magistrate Judge stated "does not demonstrate that a warrant was issued before the search commenced" the raid was conducted without a valid warrant; [ ECF No 86 No 6 PageID 1657-58] Judge Ludington adopted the initial report and recommendation of Magistrate Judge and ECF 58 → Judge Morris recommended that Defendant Henderson and Defendant Chickering were not entitled to qualified

immunity on Count II. Magistrate Judge Patricia Morris. (ECF No. 58 PageID 1135, p. 48 of 53; ECF No. 58 PageID 1136, p. 49 of 53). Report and Recommendation states:

“Plaintiffs have alleged sufficient facts that a warrant did not exist at the time” and“Undersigned finds that Plaintiffs’ rights to be free from unreasonable search and seizures.”(Page 49)

It further states:

“Taking Plaintiffs’ allegations as true and liberally construing them, Plaintiffs proffer sufficient factual allegations to demonstrate that Defendant Henderson and Chickering are not entitled to qualified immunity.” (quoted in part) This was adopted by Judge Thomas Ludington ECF No 86.

Magistrate Judge Patricia T Morris took notice that in Plaintiffs complaint there was no ordinance [ECF No 58 PageID 1097]

July 24,2024 ECF 86 → Judge Ludington adopted that determination.

Count II → Fourth Amendment unlawful search and seizure, including Henderson and Chickering, remained in the case but was stayed..

The purported warrant bears a signature that expert handwriting analysis determined is not the signature of Magistrate Stephen Worpel .

January 15,2024 [ECF No 98 PageID 1810-1830,

January 15,2024 ECF No 105]

January 15,2025 ECF No 104 Page ID 1874 Judge Ludington stated "this court ruled that …nothing in the record established that Peggy was criminally charged after her farm was searched. Given Plaintiffs "clarification, this objection will be sustained",

Consequently everything in the case has been on stay since awaiting disposition of the 80Th District Court case. NOTE: The criminal case defendant is plaintiff Sharon Zlatkin. There is no state court case against Peggy Zlatkin. Although they were in joint possession of the farm, it was the personal property of Sharon that was seized and disposed of. Nonetheless, the stay order does not distinguish between them and was stayed as to both plaintiffs.

Several controversies have arisen in the meantime, but those can be resolved once the stay is lifted.

No Scheduling Order as required by FRCP Rule 16(b)(1) has ever been entered in this case. There has been no discovery.

The Court should take Notice that the Sixth Circuit Court of Appeals has repeatedly reinforced that compliance with Rule 16 is mandatory for the orderly management of justice. In *Leary v. Daeschner, 349 F.3d 888 (6th* Cir*. 2003),* the Sixth Circuit emphasized that the text of Rule 16(b) is

mandatory and that scheduling orders are a must. Plaintiff filed this action almost 3 years ago to vindicate substantial legal rights. 127 Business days later from the time the scheduling orders were **due on or around January 28 2024;**

On **July 24,2024** this Court entered an Order formally Staying Proceedings in this matter (See Order Granting Stay,[ ECF No.86 PageID 1658]. To date, that Stay has never been lifted, modified, or vacated by the District Judge.Because the case was legally frozen by the stay, the records conclusively demonstrates parties have never engaged in a Federal Rule of Civil Procedure 26(f) "meet and confer"conference.Consequently, no discovery period has ever opened. Plaintiff has been legally barred from issuing subpoenas, taking depositions, or demanding document production.The Defendants are part of the 80th District Court current and former colleagues and close associates of the presiding Magistrate Judge Patricia T Morris and her late husband, Judge Thomas Evans of the 55th Circuit Court.

*No* ***Access*** **to the Court:** The failure to adhere to established rules not only impedes efficient case management but also fundamentally restricts the right to redress through the judicial system. *Under Boddie v. Connecticut, 401 U.S. 371 (1971):*

The U.S. Supreme Court established that due process requires, at a minimum, that a litigant be given a meaningful opportunity to be heard and to present evidence within a logical, orderly judicial sequence. Pursuant to *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950): Mathews v. Eldridge, 424 U.S. 319, 333 (1976): Dictates that the* fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."Forcing a plaintiff to proceed to a trial blind—without the ability to issue subpoenas, obtain disclosures, or view the financial and administrative logs of the defendants' public risk pool—renders the entire trial a hollow formality, violating the fundamental tenets of due process. completely.

2.Plaintiffs were never "Fugitives from Justice"Plaintiffs fled Michigan December 1,2020 there were no criminal charges at that time. We fled for our safety. [ECF No 1 PageID 59-61 ¶¶229-235] and became homeless. In the 80th District Court case No. 20-1741 was filed on December 16th 2020. This court has already examined the case file or Register of Actions in that case.

**Material Falsification of "Fugitive" Status to Force Younger Abstention and Evade Merits Review :**

The Asserted Jurisdictional Intent and Rule 11 Violations: In their motions to dismiss (ECF Nos. 22, 34, and 54), Assistant Attorneys General Danielle Allison-Yokum and Shelley McCormick asserted as an absolute, unassailable jurisdictional fact that Plaintiffs were "Fugitives from Justice" with active bench warrants issued for their arrest (ECF No. 22, (PageID 352); Attorney Generals Shelley McCormick ECF No 34 (PageID 639) noting May 11,2021 ¶ 2 footnote number six( 6 ) that she read the register of actions case number 20-1743-FY but she does not mention May 20,2021 on the same page of that register of actions the warrants were withdrawn [ECF No 90-1 PageID.1737] . This targeted fabrication was the sole factual predicate deployed to mislead the Court into executing a permanent stay under the Younger abstention doctrine, ECF No 34(PageID 654; ECF No 22 PageID 366) effectively freezing Plaintiffs' core Fourth Amendment civil rights claims (Count II) and preventing a trial on the merits. Under Rule 11 of the Federal Rules of Civil Procedure, an attorney's signature on a pleading or motion certifies to the court that the factual contentions have concrete evidentiary support. *Under Berger v. United States, 295 U.S. 78, 88 (1935*)...subvert the impartial administration of justice. The United States Supreme Court has long established that a government attorney is 'the representative not of an ordinary party to a

controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.' *Berger v. United States, 295 U.S. 78, 88 (1935). A* government attorney cannot simply "declare" a citizen a fugitive to strip them of access to a federal forum or insulate local actors from constitutional scrutiny. The Assistant Attorneys Generals provided no physical warrant, no formal extradition request, and no supporting evidence to this Court because they possessed actual knowledge that those claims were false. This was a tactical, bad-faith falsification used to subvert the impartial administration of justice.

Defendants deliberately subverted the 'bad faith or harassment' exceptions built into the Younger doctrine. See *Mitchum v. Foster, 407 U.S. 225* (*1972); Kugler v. Helfant, 421 U.S. 117, 124 (1975) (holding federal* intervention is required where state proceedings are brought in bad faith or to harass).

**Knowing Falsity and Willful Blindness to the Truth**: The assertions that Plaintiffs were "currently fugitives from justice with active bench warrants" (ECF No. 22, PageID 352) were flatly disproven by the existing record. The official state court Register of Actions (ROA) confirms that while a bench

warrant entry occurred on May 11, 2021—due to a documented Zoom technical connection failure that was immediately reported to the court clerk by a family member ECF No 33 PageID (ECF No. 90, PageID 1744–1745)— The 80th District Court refused to reschedule the Preliminary Exam and to make sure that the equipment was functional to ensure that a Defendant.Constitutional Rights were protected.

all underlying municipal warrants were fully and officially recalled on May 20, 2021 [ECF No 33 PageID 592] (ECF No. 90, PageID 1737; ). Sharon Zlatkin had already formally submitted to the state court's authority via a Zoom for a civil forfeiture proceeding on April 26, 2021; [ECF No. 1, PageID 45] .This was recognized by AG Shelley McCormick [ECF No 34, PageID 654 ¶1]. Then on May 11,2021 Sharon trying calling per the Zoom instructions ECF No 33 PageID 602-03,604,606-07, the court admitted equipment was not working ECF No 33 PageID 609-610-11

The bad faith and willful blindness of the Assistant Attorney General's are underscored by the chronological sequence of the executive branch's own records. On February 16, 2022—months before the Assistant Attorneys General finalized their insistence on an abstention stay—Detective Lieutenant Carolyn Posey executed an official law enforcement affidavit

confirming that as of **July 21, 2021**, the **State of Michigan had expressly declined prosecution, refused extradition, and verified that no active warrants existed [ECF No 33 PageID 600] filed 02/06/2024.**

Attorney Generals both filed their 12(b)(6) motions **February 12,2024** ECF Nos 22 and 34

**The time line:**

**May 11, 2021 The** official state court Register of Actions (ROA) confirms that while a bench warrant entry occurred on May 11, 2021

**May 20,2021** Bench Warrant Recalled

**July 21,2021 Lt. Posey** states that there was no bench warrant , State not interested in prosecuting the case at this time, declined extradition.

**February 6,2024** affidavit of Lt. Carolyn Posey [ECF No 33 PageID 600] is on the docket .

January 12,2024 Attorney General Yokum filed her Motion for 12(b)(6)

**February 12, 2024** Attorney General Shelley McCormick filed her Motions for 12(b)(6) filed [ECF No 22 and ECF No 34 ] alleged that Plaintiffs are " Fugitives from Justice" and references to May 11,2021

**April 23,2024 ECF No. 54 PageID 1057** Trooper Robert Lee Attorney, Attorney General Shelley McCormick stated " Fugitives from Justice" and embellishment that there's two bench warrants ; 77 days has lapsed since

the notification on the court docket the affidavit of Lt. Carolyn Posey that the State was not interested in prosecuting and declined extradition. Stated there were no warrants.

Both Attorney Generals were given notice that the state had no interest in prosecuting the case. But they fraudulently stated that Plaintiffs were " Fugitives from Justice" this is fraud on the court.

Under the Younger abstention doctrine, a federal court will generally refuse to hear a case if it would interfere with an ongoing state judicial proceeding. However, the U.S. Court of Appeals for the Sixth Circuit and the U.S. Supreme Court has established clear limits showing that Younger should not extend to a third party or non-party who has no pending state proceeding against them, especially when facing extreme, unconstitutional state delay.

1. The Non-Party Limitation (No State Proceeding Pending Against Plaintiff Peggy Zlatkin) A federal court cannot automatically apply Younger to Peggy simply because a family member or distinct entity faces state charges.

*Doran v. Salem Inn, Inc., 422 U.S. 922 (1975) (Supreme Court Precedent applied by the Sixth Circuit): The* Supreme Court explicitly held that Younger abstention must be evaluated individually for each plaintiff. In

Doran, three bars challenged a local ordinance. One bar violated the ordinance and faced state criminal prosecution; the other two complied and had no pending state cases. The Court ruled that while Younger barred the first bar from federal court, it did not bar the other two. They were legally independent, and their lack of a pending state proceeding meant they were entitled to seek federal relief.Traughber v. Beauchane, 760 F.2d 673 (6th Cir. 1985): The Sixth Circuit noted that when a federal plaintiff is not a party to the underlying state proceeding, extending Younger abstention is highly inappropriate absent extraordinary circumstances.Coles v. Granville, 448 F.3d 853 (6th Cir. 2006): The court parsed out who was and wasn't a party to ongoing leasehold litigation. It underscored that for Younger to block a federal suit, the specific federal plaintiff's rights must be addressable within their own ongoing state proceeding. Because Peggy has no state proceeding, Peggy has no venue to raise her to federal constitutional claims.

2. **The Requirement of an "Ongoing" and Active Proceeding**

For Younger to apply, the state proceeding must be an active, adequate forum. A case that has languished for over 5 years with zero movement tests the boundaries of an "ongoing" proceeding.Winter v. Wolnitzek, 834

F.3d 681 (6th Cir. 2016): The Sixth Circuit held that where state disciplinary or enforcement actions are functionally dormant or have not ripened into actual, active adjudicative proceedings, no pending state proceeding exists for Younger purposes.

•The "Adequate Opportunity" Failure: The third prong of the Younger test requires that the state proceeding provide an adequate opportunity to raise federal constitutional challenges. The state court has done absolutely nothing for over 5 years, it is failing to provide a timely or adequate forum, constituting an extraordinary circumstance that permits federal intervention.

**Why Younger Abstention Fails in This Scenario**

Under the Younger abstention doctrine, federal courts must generally refuse to intervene or issue injunctions against ongoing state judicial proceedings. However, a state court proceeding that has been completely inactive for over five years breaks the framework required for Younger to apply:

No "Ongoing" Proceeding: For Younger to trigger, there must be an ongoing, active state proceeding. A case completely dormant or unaddressed for five years fails this test; it exists purely on paper, not as an active forum.

The "Inadequate Forum" Exception: Younger requires that the state forum provide an adequate opportunity to raise constitutional challenges. Prolonged, multi-year state court inaction constitutes an effective denial of a forum altogether, triggering a well-established exception to abstention. Irreparable Injury: Forcing a litigant to remain trapped in a permanently stalled state system causes severe, ongoing constitutional injury (deprivation of due process) that cannot be remedied by waiting.

2. Legal Grounding: Boddie v. ConnecticutIn Boddie v. Connecticut, the U.S. Supreme Court ruled that under the Due Process Clause of the Fourteenth Amendment, a state cannot block a person's access to the judicial system.While Boddie specifically dealt with state-imposed filing fees barring indigent individuals from seeking a divorce, its core constitutional principle is universally applicable: when the state commands a monopoly over the legal mechanism required to vindicate a fundamental right or status, it cannot structure or operate its system in a way that deprives citizens of a meaningful opportunity to be heard.

3. **Procedural Pathway in Federal Court** when a state court refuses to act for over five years and blocks an individual's right to redress, a federal court is not required to stay the case. The litigant has a clear path to assert

federal jurisdiction:Procedural Due Process Claim: The plaintiff can file an action in Federal District Court under 42 U.S.C. § 1983, alleging that state actors are violating their Fourteenth Amendment rights by completely denying them access to a forum to resolve their grievances.Exhaustion is Excused: While federal courts usually prefer that state law remedies be exhausted first, exhaustion is legally excused when the state process is proven to be futile, ineffective, or non-functional. A five-year total breakdown perfectly satisfies the futility exception.

**January 5,2023 Sharon hired and paid $6,000 to attorney Jonathon M. Jones (P52920) to represent her**. He filed his appearance on January 5 , 2023. On (See Register of Actions, at ECF90-1, Page ID 1734.)

**Summary of Rights**

When a state court fails to provide a functioning forum for over 5 years, a litigant's right to seek redress moves to the federal system. Under Boddie, due process mandates access to a judicial resolution. Because the state system is failing to provide that forum, a federal court has a "virtually unflagging obligation" to exercise its jurisdiction, and Younger abstention cannot be used to block the federal lawsuit.

**Argument Legal Basis / Precedent:**Why It Fits the Plaintiffs Situation Individualized Application Doran v. Salem Inn . Sharon's case belongs to

her. Her charges cannot be imputed to Peggy to strip a federal court of its jurisdiction over Peggy's distinct rights.

No Adequate Forum *Middlesex County Ethics v Garden State Bar Ass'n,457 U.S.423 (1982)/ Sprint Comm'Incv Jacobs,517 U.S.69, 78(2013)*
Because Peggy is not a criminal defendant in the state court, Peggy completely lacks standing or an interface to raise Peggy constitutional claims there. PURSUANT TO *Tindall v Wayne City, Friend of the Ct.269* F.*3d 533,538,(6th Cir.2001)*
Dormancy & Extraordinary Delay PURSUANT TO Winter v. Wolnitzek
Nearly 5 and half-year freeze with no movement means the state is not conducting a meaningful, active proceeding that federal courts must defer to out of comity.
*Karakas v. McKeown, 783 F. Supp. 1028 (E.D. Mich.* 1992) :: Our Sixth Circuit has stated that, when a state is not a party and the underlying judicial proceeding is not a criminal action, Younger abstention is inappropriate. The Younger Abstention Doctrine does not apply when there is no pending state proceeding against the federal plaintiff at the time the federal complaint is filed...

A verbatim transcript cannot be made under the Michigan Court Rules (MCR) 6.104(F). Under the Constitution of the United States including due process and a person's Sixth Amendment Rights.

**July 24, 2024**: Certified 80th District Court Recorder Linda Hawkins emailed Plaintiffs confirming **that the April 26, 2021 hearing was approximately two-and-a-half hours long, noting: "Peggy and Sharon appeared via Zoom, with extremely poor connectivity and spotty audio, with numerous disconnects throughout." [ECF** No. 90, PageID 1750, Pl. Ex. 11].Exhibit No 2

**July 29, 2024:** Private transcriptionist Stacy Seals confirmed to Plaintiffs via email that the file provided to her by Attorney Matthew Cross was **only approximately 15 minutes long. [ECF No. 90-1, PageID 1725].The** Deception: Despite the recording missing over two hours of the actual proceeding, Attorney Haider Kazim asserted in writing to the Court that Exhibit G "**contains audio and transcript of all 'audible portions' of the** above-media file will be submitted as an exhibit for Judgment on the Pleadings.[ECF No. 80, PageID 1539, ¶ 7] [ECF No 90 PageID 1706-10 ¶¶19-31]] Exhibit No 3

The state court process has broken down so heavily—via uncertified transcripts, destroyed/withheld 2.5-hour raw audios, and clear non-compliance with MCR 6.104(F)—that it qualifies under the "Extraordinary Circumstances" or "Bad Faith" exceptions to Younger abstinence. Plaintiffs are asserting that the state court is incapable of providing a constitutionally adequate mechanism for review because both sides now technically agree a verbatim transcript is impossible to produce.

The Michigan Court of Appeals heavily parallels this, holding that if a transcript cannot be effectively reconstructed (under MCR 7.210(B) settled statements), and the missing pieces go to the core of the proceeding, a violation of due process has occurred (People v. Iacopelli).
Michigan Specific Context (People v. Iacopelli):In Michigan jurisprudence, such as People v. Iacopelli, 141 Mich. App. 566 (1985), the state courts emphasize that if a transcript cannot be prepared, the proper remedy under Michigan Court Rules is generally to attempt to settle the record (MCR 7.210). However, if the defense and prosecution explicitly agree—or if the record is entirely un-reconstructible (e.g., 2.5 hours reduced to a 15-minute

partial clip by a non-certified reporter)—the court cannot force an inaccurate record as "verbatim" under MCR 6.104(F).

These matters bear directly upon whether there remains a legitimate, presently ascertainable state proceeding sufficient to justify continuing the federal stay.

**Constitutional Rights Violated by Lack of a Verbatim Transcript**

The requirement of a verbatim transcript under MCR 6.104(F) is not a mere technicality; it protects fundamental trial and appellate rights. If a transcript is not verbatim or is missing entirely, the following rights are violated:

Fourteenth Amendment Due Process Right to an Adequate Appeal: The U.S. Supreme Court has long established that the state must provide an indigent criminal defendant with a "record of sufficient completeness" to permit proper consideration of their claims on appeal. Without a verbatim transcript, a defendant cannot meaningfully identify trial errors, leading to an unfair appellate process.

Sixth Amendment Right to the Effective Assistance of Counsel: Appellate counsel cannot effectively review the record, spot reversible errors, or

advocate for their client if the transcript is inaccurate, incomplete, or summarized.

Fifth and Fourteenth Amendment Due Process (Fair Notice & Right to be Heard): At the initial stage covered by MCR 6.104 (Arraignment), the court informs the defendant of the charges, their constitutional rights, and sets bail. A lack of a verbatim record prevents a review of whether the defendant was actually advised of their rights, whether a valid waiver occurred, or if bail conditions were set arbitrarily.

**ORDINANCE 2013-001 CERTIFICATE OF NON-EXISTENT ANIMAL CONTROL**

A government actor cannot exercise law enforcement powers that the municipality itself has not legally established. Under Michigan's Dog Law of 1919 (MCL 287.289a), a county board of commissioners may only establish animal control authority and citation powers through the formal passage of an animal control ordinance. The Absence of a Governing Ordinance: It is an undisputed fact that from the very existence until August 2023, Gladwin County operated entirely without an animal control ordinance on its books. Exhibit No.

Admission of Command Structure: In his sworn deposition, Defendant Maveal explicitly admitted that he was not a part of the Gladwin County

Sheriff's Department, but instead answered directly to, and was employed by, the Gladwin County Board of Commissioners. [Exhibit No ____]

The Ultra Vires Doctrine: Because the Board of Commissioners had passed no enabling ordinance prior to 2023, the Board possessed zero statutory authority over animal control enforcement. Consequently, the Board could not delegate an enforcement power it did not possess. Any "oath" administered to Maveal or designation given to him was legally vacant, rendering his years of enforcement actions entirely ultra vires (beyond the scope of legal authority).

The purported authorizing Ordinance 2013-001 never existed, as established by Mark Justin prior Administration the and the current August 10, 2026 Certificate of Non-Existence obtained through FOIA; the raid was a staged media event publicized at 1:29 AM with a National Geographic television personality (Dr. Jan Pol) listed as a participant [ECF No 33 PageID 586-67 Exhibit No ; prosecutors were physically present on Plaintiffs' property during the raid [ECF No 33 PageID. 586-88]; and [ECF No 33 PageID 587] Defendant Maveal Intentionally Fabricated the Appearance of Police Authority ("Color of Law") to Coerce Compliance

To overcome his lack of actual statutory authority, Defendant Maveal engaged in a systemic, highly visible pattern of deception designed to

project the absolute authority of a sworn law enforcement officer. This deceptive facade is the quintessential definition of acting under "color of law" for the purposes of § 1983 liability picture of James Maveal ],

Simulated Emergency Apparatus:

Defendant Maveal operated a county-funded vehicle prominently bearing the official insignia of the Gladwin County Sheriff's Department, equipped with functional emergency lighting.

Display of Deadly Force: While executing his unauthorized enforcement actions, Defendant Maveal openly carried a firearm as a duty weapon, despite lacking the certified law enforcement credentials required under Michigan law to carry a weapon in an official capacity Defendant James Maveal Jr intellectually and operationally as the “Moving Force” Behind the unlawful raid [Exhibit No ____] The record demonstrates that Defendant Maveal was not a passive participant following orders but the primary instigator who engineered, coordinated and executed the massive,multi-agency raid on Plaintiffs farm on November 4,2020 [ECF No 1 PageID 20-21 ¶¶ 71-75]. [ECF No 34 PageID 637 “Gladwin County Animal Control contacted”MSP ], Evidentiary Proof of Malice and Target Marketing ("Threatening Statements")Defendant Maveal’s actions were motivated by personal animus and a reckless, callous indifference to

Plaintiffs' federally protected rights. As detailed in the judicial record (including footnotes within the Court of Appeals Case No. 34624),[ Defendant Maveal repeatedly verbalized his intent to economically and socially destroy the Plaintiffs, making explicit, non-regulatory statements including:"I will get you.""I will get you to lose all your horses and your farm.""I will see that you have nothing.""Now I have you for a felony."These statements establish that the November 4, 2020 raid was a premeditated, retaliatory action rather than a good-faith code enforcement operation.Michigan Court of Appeals in Case No. 34624, page 6, footnote 6 [Exhibit No. ____]. [ECF No 1 PageID 13-21 ¶¶ 13-75][ECF No 1 PageID 75 ,72-78 ¶¶ 279-304].

These facts establish that the state proceeding is not a good-faith criminal prosecution entitled to federal comity. [ECF No 107 PageID 1919-1920]. Rather, it is a retaliatory vexatious prosecution brought in bad faith, supported by fabricated evidence, and weaponized to punish Plaintiffs for exercising their property rights.While the bad-faith exception to Younger is narrow, the Sixth Circuit explicitly holds that federal intervention is mandated where a state prosecution is 'undertaken without hope of obtaining valid convictions ,McNatt v. Texas, 37 F.3d 629, 632 (6th Cir. 1994), or is used 'solely... to discourage them from asserting their

constitutional rights.' Fieger v. Thomas, 74 F.3d 740, 750 (6th Cir. 1996).Here, the State cannot possess any objective 'hope of obtaining a valid conviction.' The structural foundation of the prosecution is materially undermined by evidence that the warrant relied upon a signature that expert scientific analysis establishes that the signature on the warrant instrument utilized to authorize the multi-agency raid was not executed by Magistrate Stephen Worpell . The introduction of a forged judicial instrument to validate an otherwise warrantless seizure is a profound defilement of the court's integrity and by an official Certificate of Non-Existence establishing that Ordinance 2013-001 never existed.: The November 4, 2020 raid relied on a magistrate signature, and the charging ordinance (Ordinance 2013-001) that James Maveal had authority is an established legal fiction via an official Certificate of Non-Existence.Backed by James Maveal's documented extortionate threats to make Sharon a felon to seize her farm—a fact specifically preserved in the record by the Michigan Court of Appeals (Case No. 34624, p. 6, fn. 6)[ Exhibit No _____]—this case mirrors the exact type of extra-judicial harassment prohibited under Dombrowski v. Pfister, 380 U.S. 479 (1965).Moreover, because Co-Plaintiff Peggy Zlatkin has never been a defendant in any state proceeding, applying Younger to her claims flagrantly violates the doctrine's

absolute prerequisite that a state action be active against the federal plaintiff. See Gorenc v. City of Westland, 72 F. App'x 336, 339 (6th Cir. 2003). The stay as applied to her is entirely baseless.

2. Procedural and Factual Background

A. The November 4, 2020 Raid

On November 4, 2020, approximately one hundred persons, including armed Michigan State Police (MSP) officers, Gladwin County officials, prosecutors, a National Geographic television personality (Dr. Jan Pol), and purported animal control officer armed James Maveal, descended upon Plaintiffs' farm in Butman Township, Gladwin County, Michigan. The raid was executed pursuant to a "military style contingency written plan"[Exhibit No ____]and was publicized via a media release at 1:29 AM that same morning listing all the participants[ECF No 33 PageID 586-588] The media was provided with a list of participating agencies approximately Eight (8)hours before the raid ( including the Gladwin County Prosecutor Office) before any judicial officer could have reviewed a probable cause affidavit.

The magistrate's sister, notably, works as an animal control officer involved in the raid, raising further questions about neutrality under United States v. Parker, 373 F.3d 770 (6th Cir. 2004) the person issuing/signing a warrant;

Magistrate Stephen Worpel was not legally neutral and detached because of a law-enforcement role or involvement.The warrant is void ab initio ( from the beginning) the Magistrate Steven Worpell is the brother of Krystal Moore and is not neutral and detached. [ECF No 1 PageID 41-42 ¶¶173-174.]

B. James Maveal's Threats and Retaliatory Motive

James Maveal, a private actor husband of Laura Brandon Maveal who was the Clerk of Gladwin County , instigated the raid and called MSP to assist. Prior to the raid, Maveal threatened Plaintiffs that he would "get" Plaintiff Sharon, make her a felon, ensure Plaintiffs "would lose everything," and seize the farm unless Plaintiffs surrendered the land back to Robyn Huber land contract holder.

C. The State Criminal Proceeding

Following the raid, Gladwin County charged Sharon Zlatkin with criminal offenses on or around December 16,2020. On April 26,2021 an appearance by Zoom for a civil forfeiture proceeding, Sharon was ambushed into a criminal arraignment without notice [ See ECF No 49 PageID 855-974]. There they placed an illegal $250,000 cash bond and then proceeded to the Civil forfeiture proceeding where Prosecutor Aaron Miller made a recommendation of a $275,000 restitution bond. Plaintiff

Sharon Zlatkin protested and stated that “RICO" Prosecutor Miller backed down. They all knew that there was never an ordinance for animal control in Gladwin County.

**PRIOR JUDICIAL OVERSIGHT: THE EVIDENCE OF DORMANDY WAS ON THE RECORD SIX MONTHS BEFORE THE STAY WAS ENTERED**

The Court's Order: "Younger-Feldman" Harassment: The state prosecution was brought solely to harass Plaintiffs or in absolute bad faith.Flagrant Unconstitutionality: The state statute or proceeding is patently unconstitutional on its face.Irreparable Injury & Inadequate State Forum: The inequity of maintaining the current stay is heightened by the fact that the unassailable evidence of the state proceeding's dormancy has been on this Court's docket since February 6, 2024.When the prior presiding judge issued the Order staying Count II under Younger on July 24, 2024, the Court overlooked a dispositive piece of existing docketed evidence: the formal affidavit of North Carolina Lieutenant Carolyn Posey, which was filed on the record nearly six months prior. Had that affidavit been reviewed, it would have conclusively established that as early as July 2021, Gladwin County prosecutors explicitly disclaimed any ongoing sovereign interest in prosecuting Plaintiff Sharon Zlatkin, stating directly to out-of-state law

enforcement that they were "not interested" in bringing the case to trial within 96 days of placing a $250,000 cash bond on a young woman. The previous judge's failure to account for this sworn law enforcement admission resulted in a stay built upon a false factual premise—namely, that an active, good-faith prosecution was being fiercely pursued by the State. Because the record demonstrates that the state case has been intentionally abandoned since long before the July 24, 2024 order, there was never a valid "ongoing" proceeding entitled to federal comity. The stay was entered in error and must be dissolved. Both Attorney Generals claimed that Plaintiffs were " Fugitives from Justice". ECF No 22 PageID( 352) and ECF No 34 PageID (639)

January 15th,2025 Plaintiff Files Expert Hand writing analysis of Fraudulent warrant of Magistrate Stephen Worpel Signature that the warrant was forged [ECF No. 98 PageID 1820-1830] ]ECF No 105 Motion to Amend our complaint,] [ECF No 33 (PageID 600) Affidavit of Carolyn Posey, ECF No 98 the expert hand written analysis of Ruth Holme's (PageID 1810-1830)

February 4,2025 The Suppressive Order: Summary Judgment Executed / Genuine Claims Swept Under Rug : Posey Affidavit Officially Filed on Federal Docket February 6,2024.

D. This Litigation Plaintiffs commenced this action asserting claims under 42 U.S.C. § 1983 for violations of their Fourth and Fourteenth Amendment rights. This Court previously stayed Count II in deference to the ongoing state criminal proceeding under *Younger v. Harris*, 401 U.S. 37 (1971). Now that only Count II remains and the state proceeding has been dormant for five years, the Court ordered the parties to show cause why the stay should not be dissolved.

**FAILURE TO ADDRESS ENFORCEMENT ACTIONS UNDERTAKEN PURSUANT TO A NONEXISTENT ORDINANCE (NORTON v. SHELBY COUNTY 118 U.S.425 (1886)**

The Report and Recommendation fails to address Plaintiffs' allegation that Defendants issued citations, conducted enforcement actions, and coordinated law-enforcement activity pursuant to an animal control ordinance that did not exist, despite Plaintiffs' attachment of documentary evidence confirming the absence of any such ordinance.

Plaintiffs, supported by a FOIA response from the County Administrator, that Gladwin County never enacted an ordinance 2023-01 authorizing animal control enforcement, entry, seizure, or coordination with the Michigan State Police. (Compl. ¶¶ ___; Ex. ___; see Fed. R. Civ. P. 10(c)).

Nevertheless, citations were issued and enforcement actions were undertaken against Plaintiffs as though lawful authority existed.

The Supreme Court has long held that acts taken pursuant to nonexistent or unconstitutional authority are void ab initio. In Norton v. Shelby County, 118 U.S. 425, 442 (1886), the Court explained:

“An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.”

Under Norton, governmental action purportedly taken under an ordinance that never existed confers no lawful authority and cannot be treated as valid for purposes of enforcement, immunity, or reasonableness under the Fourth Amendment. The absence of enabling legislation is not a technical defect; it is a foundational failure of authority.

Legal Principles from Norton v. Shelby County (1886)Void Ab Initio: An unconstitutional act or non-existent law is treated as if it had never been passed.

No Legal Force: It creates no office, imposes no duties, and confers no rights or powers to prosecute or penalize citizens.

Nullification: Any enforcement action or prosecution carried out under a non-existent or invalid legislative basis lacks legal effect.

The Power of Norton v. Shelby CountyIn Norton v. Shelby County, 118 U.S. 425 (1886), the Supreme Court established a fundamental constitutional principle: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; affords no protection; it creates no office; it is in legal contemplation, as inoperative as though it had never been passed.Application to Plaintiffs Case: The county officially certified that Ordinance No. 2013-001 does not exist, then legally, it never existed. It could not confer any power upon anyone.

No "De Facto" Protection: Norton specifically rules out the "de facto officer" defense for an office or power that has no legal basis. A person cannot claim they were acting in good faith under an ordinance that is a total legal fiction. Because the ordinance does not exist, any specific enforcement actions or "roles" created strictly by that ordinance are legally void from the beginning (void ab initio)

Fraudulent Warrant equals a Warrantless Raid A search warrant is the primary shield provided by the Fourth Amendment. The expert handwriting analysis established that the Magistrate’s signature was fraudulently signed:

Legal Standing: The warrant is entirely invalid. In the eyes of the law, this was a warrantless raid executed under the guise of fraudulently judicial authority.

No Exigent Circumstances: There was no an immediate, life-threatening emergency visible from a public vantage point (exigent circumstances), entering a private farm and seizing livestock or pets requires a valid, court-ordered warrant.

Theft and Conversion: Private individuals or unauthorized actors took animals without a valid legal mandate and sold them, this transcends civil asset forfeiture—it constitutes illegal conversion (civil theft).

2.**THE PLAINTIFFS HAVE MET THE HEAVY BURDEN OF DEMONSTRATING THE "BAD FAITH AND HARASSMENT" EXCEPTION REQUIRED BY THIS COURT**

This Court has recognized that federal abstention is mandatory under Younger only "absent 'bad faith, harassment or any other unusual circumstance.'. The clear factual record here establishes the exact type of extraordinary, bad-faith overreach that compels federal intervention.The harassment is not a matter of subjective speculation; it has been independently verified by the state's own judiciary. In Michigan Court of

Appeals Case No. 34624, the appellate panel explicitly put on the record its grave concerns regarding Defendant James Maveal's extrajudicial threats to destroy the Plaintiffs' livelihood, take their animals, and strip them of their land contract.While the state courts previously allowed summary judgment to stand under the presumption that a valid law was being enforced, the Plaintiffs now hold an unassailable official Certificate of Non-Existence established that the underlying Animal Control Ordinance is a legal fiction. The defense counsel's presentation of a non-existent ordinance to secure a judgment—combined with a warrantless raid built upon a fraudulent magistrate's signature—demonstrates that the state process is being used as a bad-faith vehicle for extortion and personal animus. Because the defendants have no "reasonable expectation of securing a valid conviction" under a non-existent law, the bad-faith exception is overwhelmingly met. This Court must lift the stay. While the Commissioner provided the defense attorney her IDC exclusive contract with County.Once the court determines that a case falls in a category where Younger is applicable, it must analyze the case "using a three-factor test." Doe, 860 F.3d at 365,368 (6th Cir 2017) .

These factors assess :

•(1) whether the underlying proceedings constitute an ongoing state judicial proceeding; There's been no active proceeding since April 26, 2021.

•(2) whether the proceedings implicate important state interests; state refund to try the case , refuse extradition, state no active warrant.

and

• (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge. This was a warrantless raid November 4,2020, the warrant was forged, Gladwin County had no ordinance for animal control. No jurisdiction.

Tindall v. Wayne Cnty. Friend of Ct., 269 F.3d 533, 538 (6th Cir. 2001).

The federal court should not abstain and not order the federal complaint dismissed. Plaintiffs have demonstrated extraordinary circumstances such as bad faith, harassment, flagrant unconstitutionality, or another unusual circumstance warranting equitable relief, then this federal court should decline to abstain.

Plaintiffs Sharon Zlatkin and Peggy Zlatkin respectfully submit this Response to the Court's Order to Show Cause (ECF No. 179), and show cause why this Court **should** dissolve the stay of Count II and allow this

action to proceed to adjudication. The federal court will not abstain if the plaintiff can establish one of the three exceptions to the Younger doctrine:

Bad faith or harassment: The state prosecution was brought maliciously without any real hope of securing a valid conviction.

Flagrantly unconstitutional laws: The state statute being enforced is entirely and patently unconstitutional on its face.

Other extraordinary circumstances: Severe and immediate irreparable harm exists where the state forum is unable to provide adequate relief.

The Court's order correctly identifies three independent reasons why the stay of Count II is no longer justified:

1.The Gladwin County state proceeding is dormant, not ongoing; *Younger* abstention typically requires dismissal,

2. not an indefinite stay; and

3. Co-plaintiff Peggy Zlatkin has no state proceeding pending against her.

These concerns are amplified—and mandate dissolution of the stay— new facts that have come to light since this Court entered the stay:

November 4, 2020 raid on Sharon Zlatkin's farm was illegal on three independent grounds:

No warrant was issued before the search commenced — as this Court has already found.

The purported warrant bears a forged magistrate's signature — rendering it void ab initio under binding Sixth Circuit precedent.

No animal control ordinance existed — conferring no legal authority to search, seize, or charge.

These three grounds, each documented by evidence in the record — the Court's own findings, expert handwriting analysis, and an official Certificate of Non-Existence — establish that the state prosecution against Sharon Zlatkin was brought in bad faith, without any objective hope of obtaining a valid conviction, and for the purpose of harassing and punishing her for exercising her constitutional rights.

Under Dombrowski v. Pfister, Fieger v. Thomas, and McNatt v. Texas, the bad faith/harassment exception to Younger abstention requires federal intervention. Under Winter v. Wolnitzek, a proceeding dormant for over five years is not "ongoing." Under Sprint Communications, this proceeding does not fall within any of the three categories where Younger applies.

The stay of Count II as applied to Plaintiff Sharon Zlatkin must be dissolved. Sharon has been denied access to a federal forum for nearly three years to vindicate her Fourth Amendment rights. She has been denied discovery. She has been denied the ability to subpoena witnesses, take depositions, or demand document production. The state proceeding against her has been abandoned for over five years. The foundational instruments of that proceeding — the warrant and the ordinance — are legal fictions.

Sharon Zlatkin is entitled to her day in federal court. The stay must be lifted.

RELIEF REQUESTED

1. Dissolve the July 24, 2024 stay of Count II and allow the surviving Fourth Amendment damages claim to proceed.

2. Direct meaningful discovery period.

. July 24,2024. Date 18,2026

/s/ Peggy Zlatkin

Peggy Zlatkin, Plaintiff, Pro Se

6632 Telegraph Rd., #176

Bloomfield Hills, MI 48301

989.387.6577

peggyz7412@gmail.com

/s/ Sharon Rose Zlatkin

Sharon Rose Zlatkin, Plaintiff, Pro Se

6632 Telegraph Rd., #176

Bloomfield Hills, MI 48301

989.387.6577

peggyz7412@gmail.com